Shirley D. ANDERSON, Plaintiff-Respondent,

v.

CITY OF MILWAUKEE, Defendant-Appellant.†

Court of Appeals

*Nos. 94–1030, 94–2162. Submitted on briefs April 4, 1995.—Decided January 30, 1996.*

(Also reported in 544 N.W.2d 630.)

†Petition to review granted.

479

For the defendant-appellant the cause was submitted on the briefs of *Grant F. Langley*, city attorney, and *Michael G. Tobin*, assistant city attorney.

For the plaintiff-respondent the cause was submitted on the briefs of *Thomas M. Pyper* of *Whyte, Hirschboeck, Dudek, S.C.*, of Madison, and *Gregory A. Fedders* of *Whyte, Hirschboeck, Dudek, S.C.*, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J. The City of Milwaukee appeals from a judgment, after a jury trial, awarding Shirley D. Anderson $443,600.87 in compensatory damages arising out of her negligence action against the City. The City also appeals from an order denying its post-verdict motion for relief under § 806.07(1)(d) and (h), STATS.[1]

The City raises several issues for our review, the primary of which is whether the City can waive the $50,000 municipal damage limitation under § 893.80(3), STATS., by failing to plead the limitation as an affirmative defense and by failing to specifically raise the statutory damage limitation in motions after the verdict. The City also challenges the trial court's denial of its motion for directed verdict, arguing that the City was immune from liability pursuant to § 893.80(4), STATS., on Anderson's claim of negligent design and construction of a walkway. Finally, the City argues that the trial court erroneously exercised its discretion by failing to grant the City's motion for relief from judgment pursuant to § 806.07, STATS., and that the interests of justice require this court to grant discretionary reversal pursuant to § 752.35, STATS., and order the trial court to modify the damage award to comply with § 893.80(3), STATS.

We conclude that: the $50,000 damage limitation is waivable by the City; the City by its conduct did in fact waive the damage limitation; the City was subject to liability under the safe-place statute; the trial court

[1] Appeal No. 94–1030 is from the judgment entered by the Hon. Robert J. Miech. Appeal No. 94–2162 is from the order denying post-verdict relief entered by the Hon. Jacqueline D. Schellinger. By order of September 19, 1994, this court consolidated the appeals.

did not erroneously exercise its discretion in denying the City's § 806.07 motion; and the City is not entitled to discretionary reversal under § 735.52, STATS. Accordingly, we affirm both the judgment and the order.

## I. BACKGROUND.

On July 8, 1989, Anderson was shopping at the Fondy's Farmer's Market, which was allegedly owned, constructed, and operated by the City of Milwaukee. Anderson tripped and fell on a raised line of bricks on the market's walkway path, thereby suffering a transverse fracture of her right knee. In July 1990, Anderson commenced a negligence action against the City alleging *inter alia* that the City violated the Wisconsin Safe-Place Statute, *see* § 101.11, STATS., and that the City: negligently designed, constructed, and maintained the walkway; negligently failed to install safety devices and warnings about the raised line of bricks; and negligently failed "to take proper steps to avoid dangerous situations" at the walkway. Anderson further alleged that the negligence and safe-place statute violations constituted breaches of "ministerial duties" on the part of the City.

The City in its answer denied liability and pleaded as affirmative defenses: (1) that the injuries suffered by Anderson "were sustained and incurred solely and proximately as the result of her own carelessness and negligence and through no fault or negligence on the part of the . . . City of Milwaukee;" and (2) that Anderson "failed to mitigate her damages." The City did not raise the § 893.80(3), STATS., municipal damage limitation as an affirmative defense, nor did it raise the limitation in any other pre-trial motion.

In January 1991, Anderson filed an offer of settlement pursuant to § 807.01(3), STATS., by which she

485

agreed to settle her claim with the City for $25,000. The City refused the offer, and the case proceeded to trial in the summer of 1993.

During the course of the trial, the City moved for a directed verdict in favor of the City, in part, on the grounds that the negligent design and construction portion of Anderson's suit was barred by § 893.80(4), STATS., which the City argued provided it with immunity for discretionary decisions concerning the design of the market's walkway. The trial court denied the motion. The City then objected to the special verdict question submitted to the jury: "Was the City of Milwaukee negligent by failing to design, construct, maintain or repair the Fondy Mall walkway as safe as the nature of the walkway would reasonably permit?" The trial court submitted the question to the jury. On July 2, 1993, the jury found the City negligent and ordered compensatory damages in the amount of $443,600.87.

On July 22, 1993, the City filed a motion after verdict seeking: (1) changes to the jury's answers to the special verdict question finding the City negligent; (2) changes to the damage award "to such lesser sum which will reflect an appropriate sum of money which under the evidence constitutes the value of the plaintiff's past and future pain, suffering, disability and loss of enjoyment;" or, in the alternative, (3) a new trial because the verdict was perverse, contrary to the law, and contrary to the evidence. The City never contacted the trial court to ask for a hearing on its motions after verdict and the ninety-day period for deciding motions after verdict expired without the trial court rendering a decision on the City's motion. *See* §§ 805.14(5) and 805.16(3), STATS.

On November 16, 1993, Anderson submitted a proposed judgment to the trial court, to which the City objected. On December 3, 1993, by a letter to the trial court, the City for the first time raised the $50,000 damage limitation under § 893.80(3), STATS., and included a proposed judgment reduced to the $50,000 statutory cap. The trial court signed Anderson's proposed judgment on March 18, 1994, awarding Anderson $443,600.87 in damages, plus costs and interest, for a total award of $618,492.55. The City appealed from this judgment in April 1994. The City, however, also filed a motion with the trial court for relief from judgment pursuant to § 806.07, STATS., calling for the trial court to exercise its equitable powers to reduce the award to the $50,000 statutory cap. The trial court concluded that the damage cap was waivable, and that the City was not entitled to equitable relief because it failed to raise the issue timely. The trial court then issued an order denying the City's motion, from which the City also appealed. Both appeals were later consolidated by this court.

## II. § 893.80(3), STATS., AND WAIVER.

The City first contends that § 893.80(3), STATS., requires that a damage award against a municipality be limited to $50,000, plus costs. Further, the City argues that "[a] judgment in excess of the statutory limitation is void as a matter of law." Accordingly, the City seeks a reversal and a reduction of the damage award in this case to $50,000 plus costs. We reject the City's argument.

Because the issue raised by the City requires us to interpret and apply a statute to undisputed facts, it presents a question of law. *See Dungan v. County of*

*Pierce,* 170 Wis. 2d 89, 93, 486 N.W.2d 579, 581 (Ct. App. 1992). We review issues of law without any deference to the conclusions of the trial court. *See Old Republic Sur. Co. v. Erlien,* 190 Wis. 2d 400, 411, 527 N.W.2d 389, 392 (Ct. App. 1994). Section 893.80(3), STATS., provides:

> **(3)** The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any ... political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000 .... No punitive damages may be allowed or recoverable in any such action under this subsection.

Based on its reading of the statute, the City argues that a judgment in excess of the statutory limit is "void" because § 893.80(3) limits the power of the court to enter a judgment in excess of the statutory cap; therefore, the City argues that the statutory limit cannot be waived. We reject the City's reading of § 893.80(3), STATS. The case law and legislative history of § 893.80(3), STATS., establish that the damage limitation is waivable if the municipality or other governmental entity fails to raise the damage limitation as an affirmative defense.

Prior to 1962, municipal governments in Wisconsin were insulated from tort liability under the principal of municipal tort immunity. *See Hayes v. City of Oshkosh,* 33 Wis. 314, 318 (1873) (adopting principal of municipal tort immunity in Wisconsin), *overruled by Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 115 N.W.2d

488

618 (1962). Commentators posit that this principal originated from the English Common Law doctrine of sovereign immunity, which "was premised on the dual ideology that 'the King can do no wrong,' and that it would be inconsistent with his sovereignty to subject him to suit in his own courts." Michael J. Waldspurger, Comment, *Ameliorating the Harsh Effects of Wisconsin's Municipal Notice of Claim Statute*, 77 MARQ. L. REV. 610, 611 (1994).[2]

In 1962, the Wisconsin Supreme Court in *Holytz* abrogated the principal of municipal tort immunity in Wisconsin, declaring: "[S]o far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity." *Holytz*, 17 Wis. 2d at 39, 115 N.W.2d at 625. In reversing nearly ninety years of precedent, the court reasoned that the principle of governmental immunity in Wisconsin was a court-made rule of law originating in *Hayes*. Hence, the supreme court declared that it could judicially abrogate that which it had originally conceived. *Id.* at 39, 115 N.W.2d at 624. Notwithstanding its conclusion in *Holytz*, the court suggested that "[i]f the legislature deems it better public policy, it is, of course, free to reinstate immunity . . . [or] impose ceilings on the amount of damages." *Id.* at 40, 115 N.W.2d at 625.

In 1963, the Wisconsin Legislature enacted § 331.43, STATS. (1963), which codified the supreme court's suggestion to the legislature in *Holytz*. Section

[2] *See also* Janet S. Harring & Sidney L. Harring, Comment, *State Immunity from Suit Without Consent, Scope and Implications*, 1971 WIS. L. REV. 879 (discussing governmental immunity in Wisconsin); Laurence M. Ulrich, Comment, *Wisconsin Recovery Limit for Victims of Municipal Torts: A Conflict of Public Interests*, 1986 WIS. L. REV. 155 (discussing municipal immunity and municipal damage limitations in Wisconsin).

331.43, STATS. (1963), *inter alia,* exposed public bodies to tort liability, but capped the amount of damages recoverable from public bodies at $25,000. *See* Laws of 1963, ch. 198 (providing original cap of $25,000). The legislature has since amended and renumbered the statute as § 893.80, STATS. *See* Laws of 1979, ch. 323, § 29 (increasing damage cap to $50,000, except for volunteer fire department defendants where damage cap remains at $25,000).

In the intervening years, the Wisconsin Supreme Court has clarified that the limitations created by the legislature after *Holytz* are not jurisdictional, but are procedural limitations on commencing and maintaining an action against a public body. *See Figgs v. City of Milwaukee,* 121 Wis. 2d 44, 50-52 n.6, 357 N.W.2d 548, 552 n.6 (1984). In *Figgs,* the issue was whether a plaintiff's failure to comply with the notice of claims provisions of § 893.80(1)(b), STATS., was a jurisdictional defect. The court of appeals had concluded that a failure to comply with § 893.80, STATS., deprived the circuit court of subject matter jurisdiction, thereby defeating the plaintiff's claim that the City should be estopped from asserting a defense under § 893.80, which the City had failed to plead in its answer. *Figgs v. City of Milwaukee,* 116 Wis. 2d 281, 286-87, 342 N.W.2d 254, 256-57 (Ct. App. 1983), *rev'd by, Figgs,* 121 Wis. 2d at 46, 357 N.W.2d at 550. The supreme court reversed, noting that the failure to comply with § 893.80, did not deprive the court of subject matter jurisdiction:

> [W]e point out that this court has stated that these statutory conditions or conditions precedent have nothing to do with subject matter jurisdiction of a circuit court. They deal only with the appropriate

conditions set by the legislature as a prerequisite for commencing or maintaining an action. Subject matter jurisdiction is conferred on the circuit courts by the constitution.

*Figgs*, 121 Wis. 2d at 46, 357 N.W.2d at 550 (citations omitted).

Because the limitations provided by the legislature under § 893.80 (including the damage cap against public bodies) are not jurisdictional, it follows that they can be waived if not properly pleaded as defenses by the public body. *See Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 128-33, 403 N.W.2d 747, 755-57 (1987) (discussing whether City's actions by entering into an insurance contract with coverage limits in excess of municipal liability cap constitute waiver of municipal damages liability cap under § 893.80(3), STATS.); *cf. Schwetz v. Employers Ins. of Wausau,* 126 Wis. 2d 32, 37, 374 N.W.2d 241, 244 (Ct. App. 1985) (concluding doctrine of estoppel can be raised). Hence, we feel no constraint in considering whether the City by its actions waived the $50,000 damage cap in the present case. *Cf. Bentley v. Cleveland County Bd.,* 41 F.3d 600, 604-05 (10th Cir. 1994) (declaring that statutory limit on liability is an affirmative defense that must be pleaded or be deemed waived).

An affirmative defense is waived if not properly pleaded in the answer. *See Oetzman v. Ahrens,* 145 Wis. 2d 560, 571, 427 N.W.2d 421, 426 (Ct. App. 1988). Although the City affirmatively pleaded two other defenses, it failed to specifically plead the damage cap.

The City argues that it raised the damage cap in its post-verdict motion by asking the court: to set the

491

damage award "to such lesser sum which will reflect an appropriate sum of money which under the evidence constitutes the value of the plaintiff's past and future pain, suffering, disability and loss of enjoyment;" or, in the alternative, to order a new trial because the verdict was contrary to the law. Nowhere in its motion, however, does the City specifically raise the issue of the damage cap provided by § 893.80(3), STATS. Attorneys representing public bodies must be subject to the same rules of proper pleading and civil procedure as private attorneys; thus, we refuse to accept the City's argument that it raised the damage cap by implication in its post-verdict motion. We acknowledge the City's argument that the legislature intended to limit the exposure of municipalities to damage awards in excess of $50,000 by enacting § 893.80, STATS.; however, because the City failed to avail itself of this protection by raising the cap as a defense, it opened itself up to a jury award in excess of this statutory limit.

## III. DIRECTED VERDICT.

Next, the City argues that the trial court erred by denying its motion for a directed verdict on the question of whether it was immune from liability on Anderson's negligent design and construction claim. The City asserts on appeal that, as a matter of law, it is immune from liability for the negligent design and construction of the walkway under § 893.80(4), STATS., which provides:

(4) No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency . . . or against its officers, officials,

492

agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

The City argues that its architect employed professional discretionary judgment in designing and constructing the walkway at the farmer's market; and that this exercise of discretion falls under the immunity granted by § 893.80(4), STATS. Accordingly, the City argues that the trial court erred by not granting its motion for directed verdict on this basis. We disagree.

■■■■■

The supreme court long ago determined that cities, as owners of public buildings, "should be subject to the safe place statute regardless of whether at a given time they are acting in a proprietary or governmental capacity," including unsafe construction. *Heiden v. Milwaukee,* 226 Wis. 92, 101, 100 N.W. 922, 926 (1937). Further, under § 893.80(4), STATS., the City enjoys statutory immunity only for acts performed in its "legislative, quasi-legislative, judicial or quasi-judicial" capacity. *See Envirologix Corp. v. City of Waukesha,* 192 Wis. 2d 277, 288-89, 531 N.W.2d 357, 363-64 (Ct. App. 1995) (The "terms 'legislative, quasi-legislative, judicial or quasi-judicial' are synonymous with the term 'discretionary.' "). There is no immunity for City actions that are "ministerial." *Id.*

■■■■■

Once the City exercised its overall discretion and decided to design and construct the farmer's market, it had to comply with the safe-place statute mandates. *See Heiden,* 226 Wis. at 101, 100 N.W. at 926; *see also Major v. County of Milwaukee,* 196 Wis. 2d 939, 944-45, 539 N.W.2d 472, 474 (Ct. App. 1995) (declaring that once county makes "discretionary" decision to comply

with a contract, it is thereafter under a "ministerial" duty to comply with the requirements of that contract). Hence, the City was under an "absolute, certain and imperative" duty to design and construct the market in a safe manner. *See C.L. v. Olson,* 143 Wis. 2d 701, 711-12, 422 N.W.2d 614, 617 (1988) (defining "ministerial duty" as one that is "absolute, certain and imperative"). While designing a walkway does invoke an architect's or engineer's professional exercise of discretion in the creative process, this creative discretion is eclipsed by the City's "ministerial" duty to comply with the safe-place statute. *See Major,* 196 Wis. 2d at 946 n.3, 539 N.W.2d at 475 n.3. (distinguishing between "the discretionary decision to agree to certain terms in a contract and the ministerial duty to comply with those terms"). In short, the trial court was correct in denying the motion for directed verdict.

## IV. MOTION FOR EQUITABLE RELIEF.

After the City filed its notice of appeal, it moved the trial court for equitable relief under RULE 806.07(1)(d) and (h), STATS., which provide:

> **Relief from judgment or order. (1)** On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>
> . . . .
> (d) The judgment is void;
>
> . . . .
> (h) Any other reasons justifying relief from the operation of the judgment.

Whether to grant relief under RULE 806.07, STATS., is a matter within the discretion of the trial court. *State*

494

*ex rel. Cynthia M.S. v. Michael F.C.,* 181 Wis. 2d 618, 624, 511 N.W.2d 868, 871 (1994). We will reverse a trial court's discretionary decision only if the trial court fails to exercise its discretion or if it erroneously exercises its discretion. *See Loy v. Bunderson,* 107 Wis. 2d 400, 414-15, 320 N.W.2d 175, 184 (1982). The trial court determined that the City failed to seek post-verdict relief based on the damage cap issue within the time allotted by § 805.16, STATS. The trial court discounted the City's excuse that it could not reach the trial court's clerk in order to set a hearing date for its motion after the verdict, stating:

> [T]here's no averments [sic] in any of the moving papers that serious attempts were made [by the City] to get a reserve judge or any other judge from the chief judge's office or through the presiding judge in the division to hear the motions after verdict within the ninety-day time limitation.
>
> . . . .
>
> I think we're also very well aware of case law that will make a jury verdict final if motions after verdict which are favorable to the defense are not heard and entered within ninety days of the verdict having taken place.
>
> That would give such a message to the defense that they must exhaust all possible avenues to try to get that judgment or the jury verdict set aside, or whatever other relief they're requesting.
> In this case, essentially the only thing that was done was [Assistant City] Attorney McGinn sent in his motions after verdict and never made a specific request for a hearing date, and there is nothing in here that shows that the chief judge's office was contacted . . . .
>
> . . . .

495

[T]axpayers get their money's worth when the persons who are hired to make sure that units of government that serve the people do their jobs properly will get exactly that, people who do their jobs properly.

I think before we talked about whether or not the people of the City of Milwaukee are getting their money's worth out of their government. Now we're talking about this particular matter before this court at this time. People of Milwaukee should in all fairness know how the City of Milwaukee through its attorneys . . . handled this case post verdict.

And so, as long as you come to court today on an issue not only of law under (d), but under equity under (h) remember, that clean hands theory still applies.

. . . .

A half million dollar case just doesn't seem to [slip between the cracks] unless someone really is behaving almost at the point of extreme negligence.

[T]o come in here and say, well, we can't find Judge Miech's clerk and we had a half million dollar judgment hanging out there against us, and the attorney retired, and I think that is a sufficiently compelling reason to grant some sort of equitable relief to the city, at this point as an aggrieved party — it's pretty hard to follow.

. . . .

Instead, this thing just sat there. So the taxpayers deserved more than what they got out of the City in this case . . . .

The trial court then denied the motion, concluding that the judgment was not void, as asserted by the

City, because the City could waive the damage cap. The trial court did not, however, determine whether the City had in fact waived its rights, apparently leaving that issue for appeal. We have determined that question above and, accordingly, we affirm the trial court's decision because, although incomplete, it was correct. *Cf. Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 30, 469 N.W.2d 595, 606 (1991) (stating appellate court will affirm a correct trial court discretionary decision even if reasoning was incorrect).

■■■

The trial court then rejected the City's argument for relief under § 806.07(1)(h), STATS.—that is, for "[a]ny other reasons justifying relief from the operation of the judgment," because the trial court reasoned that because the City showed a lack of diligence in preserving its rights, the trial court saw no reason to grant relief. In order to grant relief under § 806.07(1)(h), STATS., the trial court "must determine whether, in view of all the facts, 'extraordinary circumstances' exist which justify relief in the interests of justice." *State ex rel. Cynthia M.S.*, 181 Wis. 2d at 626, 511 N.W.2d at 871 (citation omitted). The trial court articulated a compelling reason for its conclusion that "extraordinary circumstances" did not exist for granting relief to the City—namely, that the City was not diligent in preserving its rights. Accordingly, we will not reverse the trial court; it did not erroneously exercise its discretion under § 806.07(1), STATS.

## V. DISCRETIONARY REVERSAL.

■

Lastly, the City moves for a discretionary reversal under § 752.35,STATS.[3] It renews its argument that § 893.80(3), STATS., affects the jurisdiction of the court and asserts, further, that a recovery of many times the statutory limit is unconscionable. We decline to employ our discretionary power of reversal to the City's first argument because it is contrary to established precedent. Its second argument is unsupported by authority and is meritless given the less than diligent pleading practiced by the City in this case.

## VI. SUMMARY.

We hold that the $50,000 municipal liability damage cap under § 893.80(3), STATS., is waivable; that the City, in fact, waived the cap; that the trial court did not err in denying the City's motion for directed verdict; that the trial court properly exercised its discretion in denying the City's motion for relief under § 806.07, STATS.; and that the City has not made a case for our exercise of a discretionary reversal under § 752.35, STATS. Therefore, we affirm both the judgment and the order.

---

[3] Section 752.35, STATS., provides:

In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

*By the Court.*—Judgment and order affirmed.