IN the MATTER OF the GUARDIANSHIP AND PROTECTIVE PLACEMENT OF: JEFFREY D.

JUNEAU COUNTY, Petitioner-Appellant,

v.

SAUK COUNTY, Respondent-Respondent.†

Court of Appeals

*No. 97–1365. Submitted on briefs February 11, 1998.—Decided March 12, 1998.*

(Also reported in 580 N.W.2d 694.)

†Petition to review denied.

706

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Florence Y. Searles*, corporation counsel, of *Juneau County, Wisconsin* of Mauston.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Kevin D. Bailey*, assistant corporation counsel, of *Sauk County, Wisconsin* of Baraboo.

Before Vergeront, Roggensack, and Nichol,[1] JJ.

ROGGENSACK, J. Juneau County appeals an order denying its motion for a change of the county of residence of a protectively placed individual. The issues, as framed by the parties on appeal, are whether a Wisconsin county is barred, either by § 51.40(2)(a),

---

[1] Circuit Judge Gerald Nichol is sitting by special assignment pursuant to the Judicial Exchange Program.

STATS., or the doctrine of claim preclusion, from relitigating the question of a protectively placed person's residence after that person's guardian has moved to another Wisconsin county and relocated the person into a community-based residential facility (CBRF) in that same county. We conclude that residency may be reexamined in such circumstances; and therefore, we reverse the order of the circuit court and remand for further proceedings.

## BACKGROUND

In 1985, a Juneau County court appointed Robin S. as the ch. 55 guardian of the person and the estate of her developmentally disabled adult brother, Jeffrey D. At that time, both Robin and Jeffrey were living in Juneau County. Over the following decade, the Juneau County Department of Human Services placed Jeffrey in a variety of locations within that county, including his mother's home, adult foster homes, and CBRFs. However, in 1996, after Robin moved to Sauk County, she arranged to have her brother moved to a group home CBRF located in Sauk County. Juneau County subsequently filed a motion seeking to change Jeffrey's county of residence for his protective placement to Sauk County and thus relieve itself of further supervisory and financial responsibilities for his care. The circuit court denied the motion based on its conclusion that § 51.40(2)(a), STATS., precludes any change of residence for protectively placed persons who reside in CBRFs.

## DISCUSSION

### Standard of Review.

The construction of a statute, or its application to undisputed facts, is a question of law which we decide *de novo*, without deference to the circuit court's determination. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 233, 568 N.W.2d 31, 34 (Ct. App. 1997). We will also independently consider whether claim preclusion applies to an undisputed set of facts. *Amber J.F. v. Richard B.*, 205 Wis. 2d 510, 515, 557 N.W.2d 84, 86 (Ct. App. 1996).

### Section 51.40, STATS.

The parties agree that residency is determinative of which county will be financially[2] and administratively responsible for protective placement purposes, and that § 51.40(2), STATS., precludes a change in residency under certain circumstances. However, they disagree about whether the county of residence of a protectively placed adult who resides in a CBRF can be changed. Section 51.40(2) provides in relevant part:

> **(2)** DETERMINATION OF RESIDENCE. For purposes of determining responsibility for funding the provision of services under chs. 46, 51 and 55, the county of residence of individuals aged 18 or older with developmental disability or chronic mental illness in state facilities or nursing homes shall be determined as follows:

---

[2] CBRF's are not funded solely with state funds; therefore, a determination of the residence of the ward carries with it certain financial responsibilities for care.

(a) *Directed placement.* 1. Commitment or protection placement. If an individual is under a court order of commitment under this chapter or protective placement under s. 55.06, the individual remains a resident of the county in which he or she has residence at the time the commitment or protective placement is made. If the court makes no specific finding of residence, the individual is a resident of the county in which the court is located.

. . . .

(f) *Exception; county of guardian's residence.* Notwithstanding pars. (a) and (b), an individual in a nursing home or state facility who is incapable of indicating intent and whose parent or sibling serves as his or her guardian is a resident of the guardian's county of residence if the state facility or nursing home is located in that county or if the guardian states in writing that the individual is expected to return to the guardian's county of residence when the purpose of entering the state facility or nursing home has been accomplished or when needed care and services can be obtained in that county.

Sauk County interprets paragraph (2)(a) to mean that an individual who is protectively placed in a CBRF continues to reside in the county in which he or she resided at the time the protective placement order was entered, regardless of any change in the guardian's and the ward's residence. Juneau County first responds that the entire paragraph is inapplicable because a CBRF is not a "state facility" or "nursing home." Alternatively, should this court determine a CBRF is a nursing home within the meaning of the statute, Juneau County argues that Jeffrey's residence may be changed because the facts of this case fall within the exception stated in paragraph (2)(f).

When we are asked to apply a statute whose meaning is in dispute, our efforts are directed at determining legislative intent. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). In so doing, we begin with the plain meaning of the language used in the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, our inquiry ends, and we must apply that language to the facts of the case. *Id.* Our consideration of the statutory language may properly include references to related statutes. *Racine Family Court Comm'r v. M.E.*, 165 Wis. 2d 530, 537, 478 N.W.2d 21, 24 (Ct. App. 1991).

■

Following this methodology, we conclude that the application of § 51.40(2), STATS., is clearly and unambiguously limited to individuals living in state facilities or nursing homes. Therefore, the issue we must determine is whether a CBRF fits either statutory definition. Section 51.40(1)(j) defines a state facility as "a state mental health institute, center for the developmentally disabled, prison as specified in s. 302.01 or a facility that is operated directly by the department." Section 51.40(1)(h) refers to § 50.01(3), STATS., for the definition of a nursing home. That section defines a nursing home as "a place which provides 24-hour services including board and room to 3 or more unrelated residents who because of their mental or physical condition require nursing care or personal care in excess of 7 hours a week." Section 50.01(1g) separately defines a CBRF as "a place where 5 or more unrelated adults reside in which care, treatment or services above the level of room and board but not including nursing care

711

are provided to persons residing in the facility as a primary function of the facility."

Sauk County concedes that a CBRF is not a state facility. We agree. Furthermore, since a nursing home, by statutory definition, is a place that provides some level of nursing care, and a CBRF, by definition, is a place that does not provide nursing care, a CBRF is not a nursing home within the statutory scheme. Therefore, our inquiry into the legislative intent behind § 51.40(2), STATS., need go no further than the statutory language itself, and we conclude that the continued residency provision of § 51.40(2)(a) does not apply to individuals living in CBRFs. Because of our conclusion about the application of § 51.40(2)(a), we do not reach Juneau County's alternative statutory argument.

**Claim Preclusion.**

Juneau County also contends that the circuit court improperly relied on claim preclusion to bar relitigation of Jeffrey D.'s county of residence. The doctrine of claim preclusion, formerly known as *res judicata,*[3] establishes that a final judgment between parties is conclusive for all subsequent actions between those same parties, as to all matters which were, or which could have been, litigated in the proceeding from which the judgment arose. *Amber J.F.*, 205 Wis. 2d at 516, 557 N.W.2d at 86. Claim preclusion does not bar relitigation of the determination of the county of residence

---

[3] The Wisconsin Supreme Court has clarified the doctrine of *res judicata,* which it renamed "claim preclusion." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 549, 525 N.W.2d 723, 727 (1995).

gation of the determination of the county of residence

for a protectively placed person, if there are new facts present which would affect the residency determination. *Waukesha County v. B.D.*, 163 Wis. 2d 779, 784–86, 472 N.W.2d 563, 565–66 (Ct. App. 1991).

*B.D.* dealt with the attempt to reexamine the county of residence for a protectively placed twenty-two-year-old mentally and physically disabled man who had been living in the Central Wisconsin Center for the Developmentally Disabled in Dane County since he was two years old. In 1970, when his parents first sent him to the Center, they were residents of Milwaukee County, but they were living in Waukesha County in 1985 when B.D.'s protective placement occurred. A 1987 order of the Dane County Probate Court established Waukesha County as the county of residence for B.D.[4] On those facts, we concluded that B.D.'s initial place of residence was properly determined as Waukesha County under § 51.40(2)(a), STATS., and that neither his parents' move outside of the state nor the county's recommended change of placement to a less restrictive environment constituted a new fact allowing relitigation of the residency issue. Our decision rested in part on the conclusion that the domicile of an adult incompetent cannot be moved outside of the State of Wisconsin simply by the movement of the guardian. *B.D.*, 163 Wis. 2d at 788, 472 N.W.2d at 567 (citing *Town of Carlton v. State Dep't of*

---

[4] The *Watts* decision mandated annual reviews to determine whether institutionalized individuals have been placed in the least restrictive environment. *State ex rel. Watts v. Combined Community Servs. Bd.*, 122 Wis. 2d 65, 84, 362 N.W.2d 104, 113 (1985). It was due to that mandate that a guardian ad litem was appointed for B.D. and annual reviews of his placement were conducted.

*Public Welfare*, 271 Wis. 465, 470, 74 N.W.2d 340, 343 (1956)).

██

The facts of this case are distinguishable from those in *B.D.* First, unlike B.D.'s guardian, Jeffrey's guardian changed her physical residence to a new county within Wisconsin and indicated her intent that Jeffrey's residence also be changed to that county, a situation which we deliberately left open in *B.D.* Moreover, Jeffrey, unlike B.D., was actually living in the same new county as his guardian at the time the motion for a change in the county of residence was filed. Therefore, we conclude that these facts are sufficient to establish a new claim for residency which was not litigated in the prior residence determination. In light of our conclusion that no identity of claims exist, we need not consider whether Juneau County was in privity with any of the parties to the prior residency determination. Claim preclusion does not apply in this instance.

## CONCLUSION

Neither § 51.40(2)(a), STATS., nor the doctrine of claim preclusion bars a change in the county of residence for a protectively placed person whose guardian changes her county of residence within Wisconsin and transfers her ward to a CBRF in that new county.

*By the Court.*—Order reversed and cause remanded.