Shona SWEENEY, Karrin Sweeney, by her Guardian ad Litem David Ross, Yvonne Sweeney, and Gary Sedwick, Plaintiffs-Respondents,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, Defendant-Appellant.†

Court of Appeals

*No. 97–2010. Submitted on briefs February 11, 1998.—Decided May 14, 1998.*

(Also reported in 582 N.W.2d 735.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Scott G. Pernitz* and *Kim I. Moermond* of *Winner, Wixson & Pernitz*.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *James D. Wickhem* of *Meier, Wickhem, Southworth & Lyons, S.C.*

Before Vergeront, Deininger and Jones,[1] JJ.

VERGERONT, J.   General Casualty Company of Wisconsin appeals a summary judgment in favor of Shona Sweeney, Karrin Sweeney by her guardian ad litem David Ross, Yvonne Sweeney, and Gary Sedwick (Sweeneys) concerning the underinsured motorist (UIM) coverage under a policy issued to Yvonne Sweeney. The Sweeneys sought a declaratory judgment that the reducing clause in General Casualty's policy is invalid because it renders the UIM coverage illusory. The trial court held that it is invalid and therefore does not reduce the amount the Sweeneys are entitled to recover under the UIM provisions of the policy. We conclude that the trial court's decision is correct and therefore affirm.

---

[1] Circuit Judge P. Charles Jones is sitting by special assignment pursuant to the Judicial Exchange Program.

## BACKGROUND

The facts in this case are undisputed for purposes of this appeal. The Sweeneys were involved in an accident with a vehicle driven by Aaron Huber. All parties to the accident claimed injuries. The Sweeneys claimed that they incurred a total of $150,000 in damages.

At the time of the accident, American Family Insurance Company insured Huber. The liability limit for bodily injury under that policy is $50,000, and American Family paid $50,000 to the Sweeneys. Yvonne Sweeney, the owner of the car the Sweeneys were driving, had an automobile insurance policy with General Casualty that included UIM coverage. The limit per accident for the UIM coverage was $100,000. The Sweeneys claimed that they were entitled to the entire $100,000 because their damages were $150,000 and they had recovered only $50,000 from Huber's insurer. However, General Casualty paid the Sweeneys only $50,000, asserting that the $50,000 paid by American Family was deducted from the UIM policy limit of $100,000 by operation of the "reducing clause." That clause provides: "The limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible."

The Sweeneys filed this declaratory judgment action seeking invalidation of the reducing clause and recovery of the additional $50,000. General Casualty filed a motion for summary judgment. The trial court agreed with the Sweeneys that the reducing clause is invalid because it renders the UIM coverage illusory, and granted summary judgment in favor of the Sweeneys.

## DISCUSSION

Summary judgment is appropriate where, as in this case, the underlying facts are undisputed and the only issue to be resolved is a question of law. Section 802.08(2), STATS. The construction of an insurance policy, including the extent to which a reducing clause affects insurance claims, presents a question of law, which we review de novo. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990).

The parties rely on prior decisions of this court or the supreme court that, each claims, support their position. General Casualty claims that there are no supreme court decisions invalidating a limit of liability reducing clause such as that contained in its policy, and that the clause is valid and enforceable under *Smith v. Atlantic Mutual Insurance Company*, 151 Wis. 2d 542, 444 N.W.2d 465 (Ct. App.1989) (*Smith I*), *aff'd on other grounds*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990) (*Smith II*). The Sweeneys respond that neither *Smith I* nor *Smith II* decides the issue presented in this case and that the decision of this court in *Kuhn v. Allstate Insurance Company*, 181 Wis. 2d 453, 510 N.W.2d 826 (Ct. App.1993) (*Kuhn I*), *aff'd on other grounds*, 193 Wis. 2d 50, 532 N.W.2d 124 (1995) (*Kuhn II*), and the later supreme court decision, *Matthiesen v. Continental Casualty Company*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995), support the trial court's decision that the reducing clause is invalid. We agree with the Sweeneys that neither *Smith I* nor *Smith II* controls the resolution of this appeal and that *Kuhn I* does.

In *Smith I*, the injured party received $50,000 from the tortfeasor's liability insurer. The injured party's UIM policy had a liability limit of $50,000 and a

reducing clause that provided that the "limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of organizations who may be legally responsible." The policy also contained a definition of underinsured motor vehicle as one to which a liability policy applied "but its limit for bodily injury liability is less than the limit of liability for this coverage." *Smith*, 151 Wis. 2d at 544–45, 444 N.W.2d at 466. We did not decide whether the injured party met the definition of underinsured motorist because we decided that the reducing clause unambiguously required that the insurer's liability under the UIM policy be reduced by the $50,000 the injured party received from the tortfeasor. *Id.* at 548, 444 N.W.2d at 467.

We distinguished the reducing clause in *Smith I* from the ones found ambiguous by the supreme court in *Wood v. American Family Insurance*, 148 Wis. 2d 639, 652, 436 N.W.2d 594, 599 (1989), and *Kaun v. Industrial Fire & Casualty Insurance Company*, 148 Wis. 2d 662, 668, 436 N.W.2d 321, 323 (1989). Those provided that "any amounts payable will be reduced by" payments made by the owner of an underinsured motor vehicle which may be legally liable. In *Wood* and *Kaun*, the court decided that a reasonable insured would have construed "amounts payable" to be the equivalent of damages compensable. *Wood*, 148 Wis. 2d at 652–654, 436 N.W.2d at 600; *Kaun*, 148 Wis. 2d at 670, 436 N.W.2d at 324–25. In contrast, we held in *Smith I*, that the reducing clause unambiguously reduced the "limit of liability." *Smith*, 151 Wis. 2d at 547, 444 N.W.2d at 467. We noted in a footnote that we were not addressing Smith's arguments concerning illusory contracts. *Id.* at 548 n.6, 444 N.W.2d at 467.

In affirming on other grounds, the supreme court in *Smith II* held that the tortfeasor's vehicle did not

meet the policy definition of underinsured motor vehicle. *Smith*, 155 Wis. 2d at 811, 456 N.W.2d at 599. An underinsured motor vehicle was defined in the Smith policy as a vehicle that had a policy with lower liability limits than the insured. *Id.* The tortfeasor's vehicle did not meet this definition, the court concluded, because its liability limits of $50,000 were the same as the $50,000 limits of Smith's UIM coverage. *Id.* Because of that conclusion, the court stated, "we need not reach the issue regarding to what extent the policy's reducing clause may affect the claim." *Id*. at 814, 456 N.W.2d at 600. However, the supreme court did note in a footnote that "Smith's policy does not involve the ambiguous phrase 'amounts payable.' Rather, the policy states that it is the 'limit of liability' that is reduced. . . ." *Id*. at 814 n.1, 456 N.W.2d at 600.

There is no dispute in this case that Huber's vehicle is an underinsured vehicle. Therefore, *Smith II's* holding regarding the definition of underinsured motorist does not apply. However, General Casualty argues that although the supreme court in *Smith II* did not affirm based on the reducing clause, it did approve, in the footnote noted above, the distinction between the "amounts payable language" in *Wood* and *Kaun* and the "limits of liability" language in Smith's policy. According to General Casualty, that distinction is dispositive in this case. We disagree. While the footnote does support General Casualty's efforts to distinguish the language of the reducing clause in this case from that of the reducing clause in *Wood*, that distinction does not address the issue of whether the reducing clause in this case is invalid because it renders UIM coverage illusory. Neither *Smith I* nor *Smith II*

addressed this issue.[2] However, we did address this issue in the later case, *Kuhn I*.

In *Kuhn I*, the tortfeasor's insurer paid Kuhn its bodily injury liability limit of $25,000. *Kuhn*, 181 Wis. 2d at 457, 510 N.W.2d at 827. The limit for both UM and UIM coverage in Kuhn's policy with Allstate was $50,000 per person and $100,000 per accident. *Id.* at 457–58, 510 N.W.2d at 827–28.[3] Kuhn's damages exceeded $100,000. *Id.* at 57, 510 N.W.2d at 828. The Allstate policy included a reducing clause which provided that "[i]f the loss involves the use of an underinsured auto, the limit of this coverage will be reduced by all amounts paid by or on behalf of the [tortfeasor]. . . ." *Id.* at 462, 510 N.W.2d at 830. Allstate contended that pursuant to the reducing clause, the $25,000 paid by the tortfeasor should be subtracted from the $50,000 per person limit.[4] We rejected that

---

[2] In both *Smith I* and *Smith II*, the courts stated that they were not addressing arguments concerning an illusory contract because those arguments were based on facts not before the court: *Smith v. Atlantic Mut. Ins. Co.*, 151 Wis. 2d 542, 548 n.6, 444 N.W.2d 465, 467 (Ct. App. 1989) (*Smith I*); *Smith v. Atlantic Mut. Ins. Co.*,155 Wis. 2d 808, 813–14, 456 N.W.2d 597, 600 (1990) (*Smith II*).

[3] The Allstate policy in *Kuhn I* defined an uninsured (UM) motorist to include an underinsured motorist. *Kuhn v. Allstate Ins. Co.*, 181 Wis. 2d 453, 463 n.1, 510 N.W.2d 826, 828 (Ct. App. 1993). Kuhn argued that she was entitled to recover both UM and UIM benefits and we rejected that argument. *Id.* at 461–62, 510 N.W.2d at 829.

[4] Kuhn had two vehicles insured with Allstate at the time of the accident and she paid separate premiums for coverage for each vehicle. *Kuhn*, 181 Wis. 2d at 462 n.4, 510 N.W.2d at 829. There was no dispute that she was entitled to stack the coverages for the two vehicles. *Id.* Therefore, Allstate's position was that, after applying the reducing clause and stacking the cover-

189

argument and held that the reducing clause rendered the purported $50,000 coverage illusory and was contrary to public policy. *Id* at 463, 510 N.W.2d at 830.

We recognized that Kuhn would receive some of the $50,000 benefits, whereas in a recent decision, *Hoglund v. Secura Insurance*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993), we invalidated a reducing clause as illusory because, with limits of $25,000 for the UIM coverage, the insured would never recover any UIM benefits.[5] However, we concluded that the difference in illusion created by the policy in *Hoglund* and the one before us in *Kuhn I* was "only a matter of degree." *Kuhn*, 181 Wis. 2d at 463, 510 N.W.2d at 830. We found support for our conclusion in *Wood*, although we recognized that the language of that reducing clause differed from Kuhn's.

Specifically, we relied on the reasoning in *Wood* that UIM coverage is effective when there is a tortfeasor with liability coverage inadequate for the injuries, and if this were not the case, the "underinsured liability limit is an illusion because an insured will never be entitled to recover up to that limit. . . ." *Kuhn*, 181 Wis. 2d at 464–65, 510 N.W.2d at 830–31 (citing *Wood* at 653, 436 N.W.2d at 600). Applying that

---

age for each vehicle, Kuhn was entitled to $50,000 under the UIM portion of its policy.

[5] The reason there would never be any UIM coverage under the policy in *Hoglund v. Secura Insurance*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993), is that, for Wisconsin vehicles, liability coverage cannot be issued for less than $25,000, and the policy definition of underinsured vehicle excluded an out-of-state vehicle with a liability policy limit of less than $25,000. *Hoglund*, 176 Wis. 2d at 270, 271, 500 N.W.2d at 356. Thus there would never be UIM coverage for any vehicle—whether Wisconsin or out-of-state—under Hoglund's policy.

reasoning to Kuhn's policy, we concluded that the "representation in the policy that there is $50,000 in UIM coverage that will never be paid is illusory [and not] what a reasonable insured would expect." *Id.* at 465, 510 N.W.2d at 831. We also concluded that the purposes of UIM coverage, as explained in *Wood*, supported our decision. *Id.* at 464–65, 510 N.W.2d at 830–31. We rejected the insurer's argument that *Smith I* supported its position. We noted that in *Smith I* we expressly declined to address the issue of an illusory contract. *Id.* at 465, 510 N.W.2d at 831.

The supreme court in *Kuhn II* also decided that the reducing clause was invalid, but for a different reason. *Kuhn*, 193 Wis. 2d at 62, 532 N.W.2d at 129. Because Kuhn's policy defined UIM coverage to fall within UM coverage, the court concluded, a reasonable insured would have understood that the insurer had broadened the definition of underinsured motorist to include the benefit of the protections afforded under UM coverage. *Id.* at 60, 532 N.W.2d at 128. Applying prior cases invalidating the reducing clause for UM coverage as contravening § 632.32(4)(a)1, STATS., the supreme court held the reducing clause in Kuhn's policy invalid.[6] *Id.* at 61, 532 N.W.2d at 128.

---

[6] Section 632.32(4)(a)1, STATS., provides:

(4)  REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

(a)  Uninsured motorist. 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury,

General Casualty argues that *Kuhn I* is not binding precedent because on review, the supreme court "explicitly dropped" any illusory contract rationale, affirming this court's opinion on other grounds. We disagree. The *Kuhn II* court briefly summarized the reasoning behind our decision in *Kuhn I* as part of the background of the case, but did not otherwise refer to it. The general rule is that holdings not specifically reversed on appeal retain precedential value. *Spencer v. County of Brown*, 215 Wis. 2d 635, 644, 573 N.W.2d 222, 226 (Ct. App. 1997). In *Spencer*, we declined to apply that general rule to our decision in *Anderson v. City of Milwaukee*, 199 Wis. 2d 479, 544 N.W.2d 630 (Ct. App. 1996) (*Anderson I*), *rev'd*, *Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 559 N.W.2d 563 (1997) (*Anderson II*). The reason we declined to do so is that, when the supreme court in *Anderson II* reversed *Anderson I* on a ground not addressed in *Anderson I*, it stated that there was no need to address the issue *Anderson I* had decided and added: "we emphasize that our decision should not be taken as approval of the reasoning of the Court of Appeals on that issue." *Spencer*, 215 Wis. 2d at 645, 573 N.W.2d at 226 (citing *Anderson*, 208 Wis. 2d 18, 37 n.17, 559 N.W.2d 563, 571 (1997)). The court in *Kuhn II* expressed no similar reservation concerning the basis of our decision in *Kuhn I*.

According to General Casualty, the supreme court in *Kuhn II* "disavowed" our reasoning in *Kuhn I* because, when it was presented with the argument that the reducing clause rendered coverage illusory, it did not adopt that reasoning and instead chose a differ-

sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident.

Unless otherwise indicated, all statutory references are to 1995–1996 statutes.

ent ground on which to affirm. However, *Anderson II* demonstrates that when the supreme court wants to disavow our reasoning, or, at least, prevent any implicit approval of our reasoning, it does so expressly. It did not do so in *Kuhn II*. We therefore conclude that we should apply the general rule noted in *Spencer*. Our holding in *Kuhn I*—that the reducing clause considered there was invalid because it rendered the UIM coverage illusory—retains its precedential value. We are bound by prior decisions of this court. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256 (1997). Unless a supreme court decision subsequent to *Kuhn II* indicates otherwise, our decision in *Kuhn I* controls this case.

The parties agree that *Matthiesen* is a subsequent supreme court case bearing on this issue. However, their readings of that case differ. *Matthiesen* was decided just two weeks after *Kuhn II*. In *Matthiesen*, the supreme court considered the effect of the "stacking" statute, § 631.43(1), STATS.,[7] on the reducing clauses in two UIM policies issued to one insured.[8]

---

[7] Section 631.43(1), STATS., 1993–94, provides in part:

**Other insurance provisions.** (1) GENERAL. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each is excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided . . . .

Section 631.43 was amended by 1995 Wis. Act 21, § 1.

[8] The reducing clause in the policies in *Matthiesen* provided:

The limits of liability will be reduced by:

193

*Matthiesen,* 193 Wis. 2d at 196, 532 N.W.2d at 730. The court concluded that the reducing clauses violated the statutory prohibition against stacking and were therefore invalid except to the extent that they prevent double recovery. Although the court was presented with two other grounds for invalidating the clauses—one of which was that UIM coverage would be illusory if the clauses were enforced since the insured would never recover the full amount promised by the policy from the insurer—the court stated that it did not need to address those other grounds. The court continued:

> However, we note that courts in this state have consistently held that UIM insurance contracts must be construed according to the reasonable expectations of the insured. *Kuhn v. Allstate Ins. Co.,* 193 Wis. 2d 50, 61, 532 N.W.2d 124 (1995); *Wood,* 148 Wis. 2d at 652; *Kaun v. Industrial Fire & Cas.,* 148 Wis. 2d 662, 670–71, 436 N.W.2d 321 (1989). "[W]hen purchasing UIM coverage, we believe that a reasonable insured expects to be protected against a loss caused by another that is not covered by the underinsured driver's liability coverage." *Wood,* 148 Wis. 2d at 654. Moreover, we do not overrule or limit language in previous holdings of this court and the court of appeals that invalidated the reducing clause in UIM policies in part on the basis of the illusory nature of the coverage. *See Wood,* 148 Wis. 2d at 653; *Kuhn v. Allstate Ins. Co.,* 181 Wis. 2d 453, 463–64, 510 N.W.2d 826 (Ct. App.

---

1.   A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle.

*Matthiesen v. Continental Cas. Co.,* 193 Wis. 2d 192, 198, 532 N.W.2d 729, 731 (1995).

1993), *aff'd on other grounds*, 193 Wis. 2d 50, 532 N.W.2d 124 (1995). Finally, this court has stated on multiple occasions that the underlying purpose of UIM coverage is to compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for his or her injuries. *Wood*, 148 Wis. 2d at 654; *Kaun*, 148 Wis. 2d at 671.

*Matthiesen,* 193 Wis. 2d at 203–04, 514 N.W.2d at 733–34.

To emphasize further what it was not deciding, the *Matthiesen* court stated:

> Justice Abrahamson in her concurrence correctly states that the stacking statute would not apply if Matthiesen had only one UIM policy. However, her statement that the reasoning of this opinion would therefore require enforcement of that reducing clause is incorrect. The opinion specifically states that it does not reach the issue of whether the clause would be enforceable under those circumstances.

*Id.* at 203 n.5, 514 N.W.2d at 733.

The *Matthiesen* court also rejected the argument that our decision in *Smith I* was controlling and rendered the reducing clause enforceable. Besides noting that stacking was not an issue in *Smith I*, the court observed that in *Smith I* we had erroneously decided that the reducing clause was valid without first determining that coverage existed. The reducing clause in Smith's UIM policy, the *Matthiesen* court said, was "irrelevant." The court concluded that neither *Smith I* nor *Smith II* required that the reducing clauses in the case before it be enforceable. *Matthiesen*, 193 Wis. 2d at 202–03, 514 N.W.2d at 733.

The Sweeneys argue that the above quoted language from *Matthiesen*, particularly the reference to our decision in *Kuhn I*, supports their position that the reducing clause is invalid because it renders the $100,000 UIM coverage illusory. In General Casualty's view, the quoted language is ambiguous, but the proper reading is that the supreme court was referring solely to instances where there would be *no* recovery by operation of a reducing clause. Moreover, General Casualty contends, *Matthiesen* is the third time (*Smith II* and *Kuhn II* being the first and second) that the supreme court declined to invalidate a reducing clause such as the one in General Casualty's policy on the ground that it renders UIM coverage illusory. According to General Casualty, this court cannot invalidate a reducing clause on the ground that it renders UIM coverage illusory unless either the supreme court or the legislature first adopts such a rule, and neither has done so.

We need not decide the precise scope of the supreme court's comments in *Matthiesen*, because we are persuaded that they do not express any reservations or questions about our holding in *Kuhn I*. That being so, we conclude that *Kuhn I* is controlling in the matter before us. We do not agree with General Casualty that treating our holding in *Kuhn I* as binding precedent amounts to acting outside the bounds of our authority. Although it is true the primary function of the court of appeals is error correcting, *see Cook*, 208 Wis. 2d at 188, 560 N.W.2d at 256, it is also true that "under some circumstances it [the court of appeals] necessarily performs a second function, that of law defining and law development, as it adapts the common law and interprets statutes and the federal and state constitutions in the cases it decides." *Id.*

■

In *Kuhn I*, we interpreted and applied decisions of the supreme court and prior decisions of this court that, in turn, were interpretations and applications of supreme court decisions. That was properly within our role, as recognized by the supreme court in *Cook*. *Cook* also instructs that we may not overrule, modify or withdraw language from previously published decisions of the court of appeals. Because our holding in *Kuhn I* has not been reversed or called into question by the supreme court, it governs our decision in this case. We conclude, based on *Kuhn I*, that the trial court was correct in holding the reducing clause in General Casualty's policy invalid because it rendered the $100,000 UIM coverage the Sweeneys purchased illusory.[9]

*By the Court.*—Judgment affirmed.

DEININGER, J. *(concurring).* I agree that the result we reach in this appeal is compelled by prior holdings of this court. I write separately, however, to note that, in my view, our present holding, taken together with *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990) *(Smith II)*, produces a set of incompatible results. The appellate decisions reviewed in the court's opinion demonstrate that, while our stated purpose is to realize the reasonable expectations of the parties to the policy, we do not consistently achieve that goal. *Cf. Weimer v. Country Mut. Ins. Co.*, 211 Wis. 2d 845, 857–58, 565 N.W.2d 595, 600–01 (Ct. App. 1997), *rev'd in part on other grounds,* 217 Wis. 2d 705, 575 N.W.2d 466 (1998).

---

[9] Because of this conclusion, we need not address the trial court's holding that the placement and size of the reducing clause affect an insured's reasonable expectation.

The policy language presently at issue explicitly limits the underinsured motorist coverage as follows: "The limit of liability [$100,000] shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." We have previously held that this language creates coverage that is "illusory" and "contrary to public policy" because the insured can never obtain $100,000 in underinsured motorist coverage, but only some lesser amount. *Kuhn v. Allstate Ins. Co.,* 181 Wis. 2d 453, 463–65, 510 N.W.2d 826, 830–31 (Ct. App. 1993) *(Kuhn I), aff'd on other grounds,* 193 Wis. 2d 50, 532 N.W.2d 124 (1995) *(Kuhn II).* Thus, the Sweeneys, who claim to have suffered $150,000 in damages, will be made whole in the present case by receiving their full damages from a combination of the tortfeasor's policy ($50,000) and General Casualty ($100,000).

The supreme court has concluded, however, that underinsured motorist coverage can be extinguished entirely by a definition in the insurance policy which compares the amount of liability coverage which exists for the tortfeasor's vehicle to the underinsured motorist coverage limit of the policy. *Smith II,* 155 Wis. 2d at 811–14, 456 N.W.2d at 599–600. The definition of "underinsured motor vehicle" in the present policy is virtually identical to that considered in *Smith. See id.* at 811, 456 N.W.2d at 599. Under that definition, any vehicle covered for at least $100,000 is *not* an "underinsured motor vehicle." Thus, if the tortfeasor's liability coverage here had been $100,000, the Sweeneys would recover only $100,000 from the tortfeasor's insurer, and nothing from General Casualty, even though the tortfeasor would still have been "underinsured" with respect to the $150,000 in damages sustained. *See Kuhn I,* 181 Wis. 2d at 465, 510 N.W.2d at 831 (The

purpose of underinsured motorist coverage is to compensate a victim when the tortfeasor's liability limits " 'are not adequate to *fully compensate* the victim for his or her injuries.' ") (alteration in original, quoted source omitted).

I have difficulty understanding what public policy is served by our present and prior holdings on the issue presented. We insist here and in *Kuhn I* that an insurance policy may not be written so as to guarantee that a certain dollar amount of insurance coverage will be available to compensate an insured when he or she is injured in an accident caused by another driver, if the policy provides that the specified sum will be paid in part by the tortfeasor's insurer and in part by the insured's own company. Yet, the coverage in question may be written, with judicial blessing, so as to limit the compensation available to the insured to the same fixed sum, provided it is paid entirely by the tortfeasor's insurer. The legislature apparently does not share this court's view that policy language such as the reducing clause at issue here violates public policy. Section 632.32(5)(i)1, STATS., effective July 15, 1995, now permits a motor vehicle insurance policy to "provide that the limits under the policy for uninsured and underinsured motorist coverage for bodily injury . . . shall be reduced by . . . [a]mounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury . . . for which the payment is made."