Patricia Hause, Richard Bates, Todd Bates, Jeffrey Bates, Bradley Bates, and Alexis Bates, by their Guardian ad Litem, William J. Katt, Plaintiffs-Appellants,†

v.

John P. Bresina and Cornell Aero Works, Defendants,

Phoenix Aviation Managers and Old Republic Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 01–3041. Submitted on briefs May 21, 2002.—Decided June 11, 2002.*

2002 WI App 188

(Also reported in 649 N.W.2d 736.)

† Petition to review denied 9-3-02.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William J. Katt* and *Kevin A. Christensen* of *Leib & Katt, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Russell A. Klingaman* of *Hinshaw & Culbertson* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Patricia Hause and Richard Bates, individually; and Todd, Jeffery, Bradley, and Alexis Bates, by their guardian ad litem, (the Bateses) bring this interlocutory appeal of a nonfinal order for declaratory relief limiting the insurance liability of Old Republic Insurance Company. The Bateses claim the circuit court erred when it determined their negligent infliction of emotional distress and wrongful death claims stemming from the death of Deborah Hause-Bates were covered by Old Republic's policy's $100,000 "each person" coverage rather than its $1,000,000 "each occurrence" coverage. We granted the Bateses' petition to determine which policy clause covers their claims. We conclude their claims are covered by the "each person" clause and affirm the circuit court's order.

## BACKGROUND

¶ 2. Although the interpretation of an insurance contract is solely a matter of law, a brief summary of the allegations found in the Bateses' amended complaint is necessary to resolve this dispute. On May 2, 2000, Deborah Hause-Bates was killed in an airplane crash near the Cornell Municipal Airport in Chippewa County. Her son Jeffery was at the airport and saw the crash. Deborah's other children, Todd, Bradley, and Alexis, arrived with Deborah's mother, Patricia Hause, after the crash and saw the burning airplane. The pilot, Arthur Bresina, was also killed in the crash. The Bateses brought suit against John Bresina, who had

flown the airplane prior to Arthur; Cornell Aero Works, Arthur and John's employer; and Old Republic and Phoenix Aviation Managers, which both insured Arthur, John, and Cornell. Here, we are only concerned with Old Republic's policy. In their amended complaint, the Bateses brought claims for wrongful death and negligent infliction of emotional distress.[1]

¶ 3. Old Republic asked the court for declaratory relief limiting its liability to the policy's $100,000 "each person" coverage. The Bateses also moved for declaratory relief to set Old Republic's liability at the policy's $1,000,000 "each occurrence" coverage. After receiving briefs and hearing arguments, the court agreed with Old Republic's interpretation of the policy and the Bateses appealed. We granted the Bateses' petition to determine whether their claims for wrongful death and negligent infliction of emotional distress are covered under the policy's "each person" or "each occurrence" clause. We conclude the Bateses' claims are covered by the "each person" clause and affirm the court's order.

## DISCUSSION

¶ 4. The interpretation of an insurance contract is a question of law we review de novo. *Danbeck v. American Fam. Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. An insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which we interpret as a reasonable person in the position of the

---

[1] In addition, Deborah's estate brought a claim for pain and suffering and emotional distress. Richard Bates, Deborah's husband, also brought a wrongful death claim. Patricia Hause sought to recover Deborah's medical and funeral expenses.

insured would understand it. *Id.* The words of an insurance policy are given their common and ordinary meaning. *Id.* An insurance policy is ambiguous if the language when read in context is fairly or reasonably susceptible to more than one construction. *Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 536–37, 514 N.W.2d 1 (1994). Where the language of the policy is plain and unambiguous, we enforce it as written, without resort to rules of construction or principles in case law. *Danbeck*, 2001 WI 91 at ¶ 10. This is to avoid rewriting the contract by construction and imposing contract obligations that the parties did not undertake. *Id.* If a policy is ambiguous, it is construed in favor of coverage. *Id.*

¶ 5. Old Republic offers several different types of coverage under its Aviation Policy. In the policy in question, Cornell opted for "Coverage D—Single Limit Bodily Injury and Property Damage Liability," which obligates Old Republic "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by any person (excluding passengers unless the words "Including Passengers" appear in Item 4 of the Declarations) and property damage."

¶ 6. Item four of the declarations sets Old Republic's liability under "Coverage D" for the "Single Limit Bodily Injury, Including Passengers, and Property Damage" at $1,000,000 for "each occurrence." It also says "Passenger Liability Limited To" $100,000 for "each person." The policy limits its liability under "Coverage D," in relevant part, as follows:

> The total liability of the Company for all damages, including damages for care and loss of services because of bodily injury or property damages sustained by one or more persons or organizations as the result of any

one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence".

And further provided that if the Declarations are completed to show "passenger Liability limited to", the total liability of the Company for all damages, including damages for care and loss of service because of bodily injury to passengers shall not exceed:

(a) as respects any one passenger, the amount stated in the Declarations as applicable to "each person," regardless of the number of persons bringing a claim.[2]

■

¶ 7. From this policy language, the trial court concluded that Old Republic's liability for the Bateses' claims was subject to the "each person" limitation. We agree. Under the terms of the agreement, if the declarations are completed to show "passenger liability limited to," as they are in this policy, then the total liability of Old Republic for all damages that happen *because of* the bodily injury to one passenger is limited to the "each person" coverage in the declarations. Here, that coverage is limited to $100,000. Any injuries the Bateses have suffered would not have happened but for Deborah's death. Their claims, and any subsequent damages, arise only because of the bodily injury she suffered.

---

[2] The policy defines "bodily injury" as "bodily injury, sickness, disease or mental anguish sustained by any person which occurs during the policy period, including death at any time resulting therefrom."

¶ 8. The Bateses argue the trial court erred by determining that the policy's limitation of coverage is clear and unambiguous. They correctly point out a policy is ambiguous when it is subject to more than one reasonable construction. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990). However, a policy is not ambiguous simply because the insured has offered a "remotely possible second interpretation." *United States Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 503, 476 N.W.2d 280 (Ct. App. 1991). Nor are policy provisions ambiguous merely because the language is complex or cumbersome. *Sukala v. Heritage Mut. Ins. Co.*, 2001 WI App 266, ¶ 10, 240 Wis. 2d 65, 622 N.W.2d 457. The Bateses suggest it is a reasonable interpretation to read the policy as limiting the passengers' claims to $100,000 and the nonpassengers' claims to $1,000,000. They point to the distinction the policy makes between "passengers" and "persons" and suggest this distinction makes the first paragraph under "Coverage D" in the policy's "Limit of Company's Liability" section applicable to the claims of nonpassengers, while the remaining language of that section applies to the claims of passengers.

¶ 9. The policy language does not support the Bateses' proposed construction. If the parties have agreed to have the policy's declarations read "passenger liability limited to," as they have in this case, Old Republic's liability for "all damages, including damages for care and loss of service because of bodily injury to passengers" is limited to the $100,000 "each passenger" limit, "regardless of the number of persons bringing a claim." The Bateses argue that this specific language only applies to claims made by passengers and their

claims fall under the preceding clause in the policy, which would subject Old Republic to the $1,000,000 "each occurrence" limit. The plain meaning of these clauses, however, is that when the parties agree to limit the amount of recovery per passenger, then Old Republic's liability for all claims that are made because of the injury to a passenger is limited to the "each person" limit.

¶ 10. The Bateses also argue the $100,000 "passenger" coverage is in addition to the $1,000,000 overall coverage, and it would be an absurd reading of the policy to have its additional coverage reduce the overall coverage. They also contend that the two limitation of liability clauses conflict. The Bateses misconstrue the policy. The $1,000,000 "per occurrence" coverage is Old Republic's overall limit of liability for any one event, and the $100,000 "per person" limit is a limit on the claims that arise because of bodily injury to any one passenger because of that event. The clause does not reduce Old Republic's overall liability; it defines how that liability would be divided among claims. Read together, these clauses are neither absurd nor conflicting.

■

¶ 11. Our reading of the policy is supported by two other phrases in the limitation of liability clause. First, the language saying the company is liable for "all damages, including damages for care and loss of services because of bodily injury to passengers" suggests the parties intended to limit liability for all claims related to the bodily injury of one passenger to the $100,000 limit, whether suffered by the passenger or another person. A loss of services claim, for instance, would have to be made by someone other than the injured passenger. Further, subsec. (a) under "Coverage

D" in the limitations clause caps liability for bodily injury to any one passenger at the "per person" amount "regardless of the number of persons bringing a claim." If the limitation of liability clause were interpreted to mean only the injured passenger could make claims under this section, these two sections would appear to be meaningless. In determining whether there is an ambiguity in an insurance contract, we must look to the policy as a whole and give meaning to each of the provisions in the policy if possible. *Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 562, 278 N.W.2d 857 (1979). Here, if we are to give meaning to these phrases, it can only mean that the parties intended to include all claims related to the injury of a passenger in the $100,000 limit.

¶ 12. The Bateses also rely on a tenth circuit case, interpreting a very similar Old Republic policy under Colorado law. In *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222 (10th Cir. 2002), the court determined that the wrongful death claims of the families of two men killed in an airplane crash were unambiguously covered by the policy's "each occurrence" limit. *Id.* at 1227. The relevant parts of the policy's limitations on liability section are nearly identical to those in this case, the only apparent difference being the absence of the "regardless of the number of persons bringing a claim" language at the end of paragraph (a) under Coverage D. *Id.* at 1226. The court determined the policy distinguished between passengers and nonpassengers and the parties intended to have the claims of nonpassengers subject to the "each occurrence" limit. *Id.* at 1227. We are not persuaded that the analysis in *Durango* applies to this policy. Importantly, we note the *Durango* policy lacks the "regardless of the number of persons" language found in

673

Old Republic's policy here. As noted, we believe this shows the intent of the parties in this case to include all claims arising because of the bodily injury to one passenger under the "each person" limit. In addition, we are satisfied the "all damages, including damages for care and loss of service because of bodily injury to passengers" language clearly limits Old Republic's liability for the claims of nonpassengers which result from bodily injuries to passengers.

¶ 13. The Bateses also make specific arguments why their negligent infliction of emotional distress and wrongful death claims fall under the policy's "each occurrence" limit. Regarding the emotional distress claims, the Bateses point to *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994), in which our supreme court first recognized an independent claim for emotional distress injuries to bystanders. The Bateses contend their *Bowen* claims are independent from those suffered by Deborah, and because Old Republic's policy includes mental anguish in its definition of bodily injury, these claims should fall under the "each occurrence" policy limit. The Bateses further contend that the trial court erred in its reliance on *Estate of Gocha v. Shimon*, 215 Wis. 2d 586, 573 N.W.2d 218 (Ct. App. 1997). In *Gocha*, the family of Kyle Gocha filed claims for emotional distress after witnessing his death after an automobile struck him. *Id.* at 589. The insurance policy in *Gocha* defined "bodily injury to one person" to include all injury and damages to others resulting from that bodily injury. *Id.* at 589. We determined that under the policy's terms, the family's claims were subject to the "each person" limit rather than the "each accident" limit, noting: "*But for* the bodily injury to Kyle, the Gochas would not have suffered any

emotional injuries." *Id.* at 593. The Bateses argue *Gocha* is irrelevant because of the differences in policy language.

¶ 14. The Bateses' arguments are not persuasive. While *Gocha*'s and Old Republic's policies use different language, they have a similar effect. Both limit claims related to the bodily injury of one person to a certain coverage limit. The Old Republic policy limits coverage for all damages that occur because of bodily injuries to passengers to the "each person" amount. The *Gocha* policy defines "bodily injury" in a way to limit its coverage for related claims. *Id.* at 589. We also rejected the Gochas' argument, similar to the Bateses', regarding the independent nature of their *Bowen* claims. *Id.* at 591. The issue is how the policy treats the claims, not how the law defines them. Under Old Republic's policy, the Bateses' claims fall under the "each person" limit.

¶ 15. In addition, the Bateses argue that their wrongful death claims should be covered by the policy's "each occurrence" limit. The Bateses contend that the trial court accepted Old Republic's argument that the derivative nature of the claims brought them under the "per person" limit.[3] Old Republic relies primarily on two cases, *Ruppa v. American States Ins. Co.*, 91 Wis. 2d 628, 284 N.W.2d 318 (1979) and *Richie v. American Fam. Mut. Ins. Co.*, 140 Wis. 2d 51, 409 N.W.2d 146 (Ct. App. 1987). In *Ruppa*, the plaintiff's husband had been killed in a horse show, but had signed a release prior the accident. *Id.* at 633, 635–36. In assessing the effect of the release on the plaintiff's wrongful death claim, the supreme court noted "an action for wrongful death is

---

[3] We find no indication in the record that the trial court based its decision on the Bateses' wrongful death claims being derivative.

675

derivative. One is liable to the plaintiff in an action under that statute only if and to the extent that he would have been liable to the decedent had death not ensued." *Id.* at 646.

¶ 16. In *Richie*, the wife and children of a man injured in a car accident brought claims for medical expenses and loss of consortium. *Richie*, 140 Wis. 2d at 53. The Richies sought coverage under the policy's "each occurrence" limit, rather than its "each person" limit. *Id.* The policy limited the amount of recovery for bodily injury to one person to the "each person" limit of $100,000. *Id.* at 55. We determined that under the policy in *Richie*, the loss of consortium claim was not a bodily injury and the "each person" limit applied to the family's claims because they arose out of one person's bodily injuries. *Id.* Old Republic argues that together, *Ruppa* and *Richie* stand for the proposition that derivative claims, such as the Bateses' wrongful death claims, must fall under the "each person" limit in their policy.

¶ 17. The Bateses distinguish *Ruppa* by arguing it involves a liability release rather than an insurance agreement. In addition, they contend *Richie* is inapplicable because the *Richie* policy language is different from Old Republic's. They argue that Old Republic's "passenger" and "person" distinction in its policy is not found in the *Richie* policy, making it irrelevant to this case. Instead, the Bateses point out, *Richie* recognized: "If more than one person suffers bodily injury, there may be separate claims." *Id.* at 55. The Bateses contend that Old Republic's policy recognizes separate bodily injury claims for the family members and coverage should fall under the "each occurrence" limit.

¶ 18. While we do not believe *Ruppa* and *Richie*, when examined together, require a finding the Bateses'

claims fall under the "each person" limit, these cases are not completely irrelevant. Wrongful death claims are derivative, as explained in *Ruppa*, 91 Wis. 2d at 646. How an insurance policy treats derivative claims, however, is determined by the language in that policy. In *Richie*, the derivative claims were treated as having arisen from the bodily injury of one person, limiting the coverage under that policy to the "each person" limit. *Richie*, 140 Wis. 2d at 57. Similarly, Old Republic's policy limits recovery to its "each person" limit for all damages that occur because of bodily injury to a passenger. This includes the Bateses' wrongful death and emotional distress claims.

*By the Court.*—Order affirmed.