BADGER MUTUAL INSURANCE COMPANY, Plaintiff,

v.

Dennis Schmitz, Defendant-Respondent-Petitioner,

THE AMERICAN HARDWARE INSURANCE GROUP, Defendant-Appellant,

Valerie Schmitz and SCI Management Corp., Defendants.

Supreme Court

*No. 00–2682. Oral argument March 6, 2002.—Decided July 10, 2002.*

2002 WI 98

(Also reported in 647 N.W.2d 223.)

For the defendant-respondent-petitioner there were briefs by *Russell T. Golla,* and *Anderson, Shannon, O'Brien, Rice & Bertz,* Stevens Point, and oral argument by *Russell T. Golla.*

For the defendant-appellant there was a brief by *Keith W. Kostecke* and *Menn, Teetaert & Beisenstein, Ltd.,* Appleton, and oral argument by *Keith W. Kostecke.*

An amicus curiae brief was filed by *Lynn R. Laufenberg* and *Laufenberg & Hoefle, S.C.,* Milwaukee, and *Robert L. Jaskulski* and *Domnitz, Mawicke & Goisman, S.C.,* Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals[1] that reversed a decision of the circuit court for Outagamie County, James T. Bayorgeon, Judge. There are two issues before the court.

¶ 2. First, does this court's decision in *Dowhower v. West Bend Mutual Insurance Co.,* 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557, preclude a court from finding that an unambiguous clause reducing the underinsured motorists (UIM) liability of an insurer, is ambiguous in the context of a specific policy?

¶ 3. Second, if the answer to the first question is "no," is the reducing clause in the policy before the court ambiguous in the context of the entire policy, thereby rendering the reducing clause illusory and unenforceable?

¶ 4. This case involves an automobile liability insurance policy that provided UIM coverage and had a

---

[1] *Badger Mut. Ins. Co. v. Schmitz,* unpublished slip op. (Wis. Ct. App. July 31, 2001).

reducing clause that conforms to Wis. Stat. § 632.32(5)(i) (1999–2000).[2] The statute reads in part:

> (i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:
>
> (1) Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

Wis. Stat. § 632.32(5)(i).

¶ 5. The reducing clause in the policy in question provided that the limit of UIM liability would be reduced by payments made to the insured by or on behalf of parties legally responsible for damages caused by an underinsured motorist. In this case, after the insured suffered injuries in an accident involving an underinsured motorist, and after the insured received payments from the underinsured motorist, the insurer applied the reducing clause in the insured's policy to reduce its liability to its insured by the amount of the payments received from the underinsured motorist.

¶ 6. The insured moved for a judgment declaring the UIM provisions invalid. The circuit court granted the declaratory judgment, determining that the insurance policy was illusory and unenforceable. The court of appeals reversed, holding that the policy was unambiguous and could not be deemed illusory.

¶ 7. After a thorough review of the insurance policy in question, we determine that while the reducing clause complies with the provision in Wis. Stat.

---

[2] All subsequent references to the Wisconsin statutes are to the 1999–2000 volumes unless otherwise indicated.

§ 632.32(5)(i), its limitation on UIM coverage is ambiguous in the context of the entire policy. We believe that a reasonable insured would not realize or expect that the insured's recovery under the UIM provision of the policy would be reduced by the payments received from the underinsured motorist. Thus, in the context of the entire policy, the reducing clause is ambiguous and renders the UIM coverage illusory. We further conclude that the inquiry undertaken by the circuit court was wholly consistent with the inquiry contemplated in the *Dowhower* decision. Accordingly, we reverse the decision of the court of appeals.

## I. FACTS

¶ 8. The facts of this case are undisputed. On November 22, 1997, Dennis Schmitz was injured in a single vehicle accident. Schmitz was riding as a guest passenger in a 1997 Chevrolet pick-up truck traveling southbound on U.S. Highway 441 in Appleton. The vehicle slid on a patch of ice and rolled over. Schmitz sustained injuries in the accident and was rendered a quadriplegic.

¶ 9. The driver of the truck, Valerie Johnson, was insured by Badger Mutual Insurance Company (Badger Mutual).[3] Her automobile insurance policy contained a liability limit of $100,000 per person. Badger Mutual commenced this action seeking a declaration of its rights, duties and obligations with respect to the liability insurance proceeds it wished to pay in settlement of Schmitz's personal injury claim.

¶ 10. Schmitz himself had an automobile insurance policy issued by American Merchants Casualty

---

[3] The insurance policy was issued to Valerie Johnson. By the time this action was commenced, Valerie Johnson had become Valerie Schmitz.

Company[4] (American Merchants) which included UIM coverage with a liability limit of $250,000 per person. Schmitz filed a cross-claim against American Merchants, asserting that the vehicle in which he was a passenger was an underinsured motor vehicle as defined in the American Merchants policy and that he was "entitled to the entirety of the $250,000 per-person limit of liability set forth in that policy."

¶ 11. In its answer, American Merchants acknowledged that the vehicle in question was an underinsured motor vehicle under its policy and "admit[ted] that Schmitz will be entitled to underinsured motorists coverage" under the American Merchants policy. It denied, however, that Schmitz was entitled to the entire $250,000 per-person limit of liability. It "affirmatively allege[d] that the applicable limit of liability must be reduced by the sums paid Schmitz by Badger Mutual Insurance Company."

¶ 12. American Merchants' claim of reduction in its $250,000 liability relied on a reducing clause in the policy, which reads in part: "The limit of liability shall be reduced" by all sums "paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." American Merchants applied this clause to reduce the $250,000 UIM limit of liability by the $100,000 that Schmitz received from Badger Mutual. Thus, American Merchants paid

---

[4] In the complaint filed by Badger Mutual, the American Hardware Insurance Group (AHIG) is a named defendant. American Merchants Casualty Company (American Merchants), a member of the AHIG, acknowledges that AHIG was "incorrectly named" and that American Merchants is the correct name of the insurer named as defendant. Both parties refer to the insurer as American Merchants in their briefs and we will refer to the insurer as American Merchants in this opinion.

Schmitz only $150,000 on the policy. As a result, Schmitz filed a motion for summary declaratory judgment against American Merchants, seeking recovery of the full $250,000 limit of liability of his UIM coverage.

¶ 13. After extensive briefing by the parties, Judge Bayorgeon acknowledged that the reducing clause in the American Merchants policy conformed to the requirements of Wis. Stat. § 632.32(5)(i). He determined, however, that the reducing clause failed to clearly set forth that UIM payments would be reduced by sums paid by others, "so that there is no mistake, confusion or illusion with respect to what is being provided for the premium being paid." Judge Bayorgeon concluded that, "The contract is illusory and therefore unenforceable." Consequently, the circuit court granted Schmitz's motion for summary declaratory judgment.

¶ 14. On appeal, the court of appeals reversed in a unanimous, unpublished, per curiam opinion. *Badger Mut. Ins. Co. v. Schmitz,* unpublished slip op. (Wis. Ct. App. July 31, 2001). The court noted that, "A policy that contains an unambiguous reducing provision under [Wis. Stat. § 632.32(5)(i)] is valid and enforceable, and may no longer be deemed illusory." *Id.* at ¶ 4 (citing *Sukala v. Heritage Mut. Ins. Co.,* 2000 WI App 266, ¶¶ 15–20, 240 Wis. 2d 65, 622 N.W.2d 457). It determined that the American Merchants policy "sets forth an unambiguous, enforceable reducing clause, limiting [American Merchants'] liability in this case." *Id.* at ¶ 1. Accordingly, the court concluded that the policy was not illusory or unenforceable and it reversed the order of the circuit court.

¶ 15. Schmitz appealed and we granted his petition for review.

69

## II. ANALYSIS

### A. Overview of UIM Coverage and Reducing Clauses

¶ 16. We have described UIM coverage as a " 'legal iceberg,' a seemingly straightforward area of the law, which in fact can prove to be nettlesome to analyze." *Dowhower,* 2000 WI 73, ¶ 22. Over the years, there has been much uncertainty surrounding the purpose and function of UIM coverage. The confusion has produced a torrent of litigation, much of it centered on whether reducing clauses render UIM coverage illusory.

¶ 17. There are two conflicting theories regarding the purpose and function of UIM coverage. Under the first theory, the purpose of UIM coverage is to compensate an insured accident victim when the insured's damages exceed the recovery from the at-fault driver (or other responsible party). *See Taylor v. Greatway Ins. Co.,* 2001 WI 93, ¶ 32, 245 Wis. 2d 134, 628 N.W.2d 916 (Bradley, J., dissenting) (citing *Wood v. American Family Mut. Ins. Co.,* 148 Wis. 2d 639, 655, 436 N.W.2d 594 (1989), *overruled on other grounds by Matthiesen v. Continental Cas. Co.,* 193 Wis. 2d 192, 532 N.W.2d 729 (1995); *Kaun v. Industrial Fire & Cas.,* 148 Wis. 2d 662, 671, 436 N.W.2d 321 (1989)). According to this theory, UIM coverage operates as a separate fund, available for the payment of the insured's uncompensated damages. 3 Irwin E. Schermer, *Automobile Liability Insurance* § 57.01, at 57–2 (3d ed. 1995). The insured purchases coverage for his or her damages in a set dollar amount "above and beyond the liability limits of the at-fault driver." *Taylor,* 2001 WI 93, ¶ 35 (Bradley, J., dissenting).

¶ 18. The second theory is that "the purpose of underinsured motorist coverage is solely to put the insured in the same position as he [or she] would have

70

occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured." *Dowhower*, 2000 WI 73, ¶ 18 (quoting 3 Irwin E. Schermer, *Automobile Liability Insurance* § 57.01, at 57–2 (3d ed. 1995)). Under this theory, UIM coverage operates as a predetermined, fixed level of insurance coverage including payment from both the at-fault driver's liability insurance and the insured's own UIM coverage. *See Kaun,* 148 Wis. 2d at 674–75 (Steinmetz, J., dissenting).

¶ 19. The impact of the two theories is often seen in the application of reducing clauses. To illustrate, suppose an insured suffered damages totaling $200,000. Suppose further that the at-fault driver had liability insurance with a $100,000 limit and the insured had UIM coverage with a $150,000 limit.

¶ 20. Under the first theory of UIM coverage, a reducing clause operates to decrease the amount of the insured's total damages subject to UIM coverage from the insurer by any amounts received from the underinsured tortfeasor. Hence, $200,000 in damages minus a $100,000 payment from the tortfeasor leaves $100,000 in uncompensated damages, or $100,000 liability for the insurer.

¶ 21. Under the second theory, a reducing clause reduces the amount of the insurer's liability by the amount recovered from the at-fault driver. Hence, $150,000 total liability minus a $100,000 payment from the tortfeasor leaves $50,000 liability for the insurer.

¶ 22. The first theory fully compensates the insured, while the second theory leaves the insured with $50,000 in uncompensated damages.

¶ 23. If the insured had $300,000 in damages and the same policies were in place, the first theory would require the insurer to pay out all $150,000 in coverage,

leaving the insured with $50,000 in uncompensated damages because the insured did not buy enough coverage. The second theory would not increase the insurer's liability: $150,000 total liability minus a $100,000 payment from the tortfeasor leaves $50,000 of liability for the insured. The insured would be left with $150,000 in uncompensated damages.

¶ 24. Wisconsin appellate courts have been asked in case after case to interpret UIM policies and to apply reducing clauses in light of the two contradictory theories of UIM coverage. Not surprisingly, in virtually every case, the insurer has asserted that UIM coverage functions as a predetermined, fixed level of insurance coverage including payment from both the at-fault driver's liability insurance and the insured's own UIM coverage, and the reducing clause reduces the limit of UIM liability. Correspondingly, in virtually every case, the insured has asserted that UIM coverage is intended as excess coverage available when an insured's damages exceed the recovery from the at-fault driver, and the reducing clause decreases the insured's covered damages.

B. Reducing Clauses Prior to 1995

¶ 25. This court first examined reducing clauses in automobile insurance policies in the context of uninsured motorist (UM) coverage. *Leatherman v. American Family Mut. Ins. Co.*, 52 Wis. 2d 644, 190 N.W.2d 904 (1971). The court in *Leatherman* held that a reducing clause contained in UM coverage was valid and not against public policy. *Id.* at 651. The policy at issue in *Leatherman* predated the statutory mandate of UM coverage.

¶ 26. In 1971 the legislature required all automobile insurance policies issued in Wisconsin to contain

UM coverage. § 1, ch. 28, Laws of 1971. This court made clear, once UM coverage became mandatory, that reducing clauses in policies were illegal as applied to UM provisions. *Nicholson v. Home Ins. Co.*, 137 Wis. 2d 581, 594, 405 N.W.2d 327 (1987). The legislative objective in mandating UM coverage is to require that the insured receive the proceeds of the UM coverage free from any reductions. *Id.* at 604.

¶ 27. In the context of UIM coverage, this court interpreted reducing clauses as reducing the amount of the insured's total damages by the amount of payments received by the insured from the underinsured tortfeasor. *Kaun,* 148 Wis. 2d at 665; *Wood,* 148 Wis. 2d at 654. To do otherwise, we concluded, would result in the insurer never paying the policy limits of its UIM policies. *Kaun,* 148 Wis. 2d at 669–70; *Wood,* 148 Wis. 2d at 653. Shortly after these two decisions, however, the court of appeals gave a different interpretation to a reducing clause in a policy by distinguishing its language from the language in *Kaun* and *Wood. Smith v. Atlantic Mut. Ins. Co.*, 151 Wis. 2d 542, 444 N.W.2d 465 (Ct. App. 1989), *aff'd on other grounds,* 155 Wis. 2d 808, 456 N.W.2d 597 (1990).

¶ 28. In *Smith,* the court of appeals reasoned that the UIM policies in *Kaun* and *Wood* used the ambiguous phrase "amounts payable," but the reducing clause in *Smith* reduced the "limit of liability," not the "amounts payable," and thus required a different interpretation. *Smith,* 151 Wis. 2d at 547–48. The fact that the reducing clause for underinsured motorist coverage meant that the insurer would never pay the full UIM limits of its policy was never discussed in *Smith.* But the court of appeals used that concern as a basis to find reducing clauses void in subsequent cases.

¶ 29. In the first such case, the court held that UIM coverage under which no benefits would ever be paid was illusory and against public policy. *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 271, 500 N.W.2d 354 (Ct. App. 1993). In *Hoglund,* the insured had $25,000 of UIM coverage, but statutes mandated that Wisconsin drivers must have at least $25,000 in liability coverage. Thus, the court found that the reducing clause was void because it rendered the coverage illusory: if the reducing clause were applied, Hoglund would never recover under her $25,000 UIM policy. *Id.* at 270.

¶ 30. After *Hoglund,* the court of appeals continued to find reducing clauses illusory. In *Kuhn v. Allstate Insurance Co.*, 181 Wis. 2d 453, 510 N.W.2d 826 (Ct. App. 1993), *aff'd on other grounds,* 193 Wis. 2d 50, 532 N.W.2d 124 (1995), the court held that it was unreasonable for an insured with $50,000 of UIM coverage to expect never to qualify for the stated limits. The court concluded that "a representation that there is $50,000 in UIM coverage that will never be paid is illusory." *Id.* at 465. Consequently, the court held that the reducing clause was void because it rendered the purported UIM coverage illusory and contrary to public policy. *Id.* at 463.[5]

C. Wisconsin Stat. § 632.32(5)(i)

¶ 31. In 1995, in response to these decisions, the legislature created a statute expressly permitting reducing clauses that decrease UM or UIM payments by

---

[5] In 1995, this court in *Matthieson v. Continental Casualty Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995), "applied the stacking statute [Wis. Stat. § 631.43(1) (1993–94)] to void all reducing clauses in UIM policies even if not ambiguous." Arnold P. Anderson, *Wisconsin Insurance Law* § 4.1 (4th ed. 1998).

the amounts recovered from other sources. It enacted 1995 Wis. Act 21, § 4, which created Wis. Stat. § 632.32(5)(i) (1995–96), effective July 15, 1995. Section 632.32(5)(i) states in relevant part that:

> (i) A policy may provide that the limits under the policy for uninsured or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply:
>
> 1. Amounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made.

Wis. Stat. § 632.32(5)(i).

¶ 32. The purpose behind 1995 Wis. Act 21 was stated explicitly by the drafters of 1995 S.B. 6, the bill that resulted in 1995 Wis. Act 21:

> This bill overturns a series of Wisconsin appellate court decisions which have held that a motor vehicle insurance policy may not prohibit stacking of uninsured or underinsured motorist coverage or any other coverage provided by the policy. . . .
>
> . . . .
>
> The bill also permits motor vehicle insurance policies to reduce the limits payable under the policy for uninsured or underinsured motorist coverage by payments received from other sources.

Legislative Reference Bureau Drafting File for 1995 Wis. Act 21, Analysis by the Legislative Reference Bureau of 1995 S.B. 6.

¶ 33. In *Dowhower*, we recognized the intent of the legislature in creating Wis. Stat. § 632.32(5)(i). *Dowhower*, 2000 WI 73, ¶ 17. We stated that: "The

language . . . is unambiguous. . . . The statute plainly allows a motor vehicle insurance contract to state that the maximum amount that the insurer will pay under the policy will be setoff by amounts paid by a tortfeasor." In other words, the legislature made clear that the second theory of UIM coverage, in which the insured is purchasing a fixed amount of coverage, is not invalid per se.

¶ 34. Even after the passage of Wis. Stat. § 632.32(5)(i), however, cases came to Wisconsin appellate courts on the issue of the validity and enforceability of reducing clauses. For instance, in 1998 the court of appeals held in *Sweeney v. General Casualty Co.*, 220 Wis. 2d 183, 197, 582 N.W.2d 735 (Ct. App. 1998), that a specific reducing clause rendered UIM coverage illusory. The reducing clause at issue in *Sweeney* provided that "The limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." *Id.* at 185. No claim was made that the reducing clause was contrary to Wis. Stat. § 632.32(5)(i). Because the accident occurred in 1993, before the statute, the majority opinion did not address the new statute. The court instead reasoned that the holding in *Kuhn*—that a UIM coverage limit of $50,000 that would never be paid rendered the coverage illusory—applied because that decision had not been reversed or called into question by the supreme court. *Id.* at 197. Consequently, the court of appeals held that the reducing clause in the insurance policy rendered the $100,000 UIM coverage illusory. *Id.*

D. *Dowhower*

¶ 35. Two years ago, this court addressed the constitutionality and import of Wis. Stat. § 632.32(5)(i).

76

*Dowhower,* 2000 WI 73. The plaintiffs in *Dowhower* argued that § 632.32(5)(i) is unconstitutional because it authorizes fraudulent, illusory UIM coverage. We disagreed, concluding that the statute does not violate substantive due process under the state and federal constitutions. *Id.* at ¶ 2.

¶ 36. We also determined that the type of reducing clause authorized in § 632.32(5)(i) is neither ambiguous nor against public policy. *Id.* at ¶ 20. We noted that "[w]hile reducing clauses have in some instances rendered UIM coverage illusory, we have not held that reducing clauses are per se contrary to public policy." *Id.* at ¶ 22. We further stated that when a UIM policy contains a reducing clause conforming to Wis. Stat. § 632.32(5)(i), an insured is "purchasing a predetermined level of coverage against injury sustained from an underinsured motorist." *Id.* at ¶ 20.

¶ 37. After discussing the holdings in several of the pre-§ 632.32(5)(i) UIM cases outlined in this opinion, we concluded that:

> When we consider these cases in conjunction with Wis. Stat. § 632.32(5)(i), we conclude that an insurer may reduce payments made pursuant to a UIM policy by amounts received from other legally responsible persons or organizations, *provided that the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources.*

*Id.* at ¶ 33 (emphasis added). Significantly, we also recognized that "a reducing clause may be ambiguous *within the context of the insurance contract." Id.* at ¶ 35 (emphasis added).

¶ 38. Implicit in our determination that reducing clauses would be valid only if they "provided that the policy clearly sets forth that the insured is purchasing a

fixed level of UIM recovery that will be arrived at by combining payments made from all sources" was a recognition that the reasonable insured might not understand, intuitively, the scope of his or her UIM coverage. We signaled in *Dowhower* that UIM insurers that reduce UIM payments by amounts paid from other sources, are required to make clear to purchasers of UIM coverage that they are purchasing coverage that will put them in the same position they would be in if the underinsured tortfeasor had liability limits equal to the amount of UIM coverage the insured purchased. Insureds will then understand that if they want to be assured of having, say, $200,000 in total available coverage, they will have to purchase UIM coverage with a $200,000 limit.

¶ 39. In her concurring opinion, Justice Bradley emphasized the requirement that reducing clauses and automobile policies as a whole be written so as to clearly inform insureds of exactly what coverage their UIM provisions afford them:

> The legislature was aware of the concerns over deception voiced by Wisconsin courts. Although it authorized reducing clauses under Wis. Stat. § 632.32(5)(i)1, the legislature envisioned clear policies without a hint of illusion to protect consumers from fraudulent practices. It did not authorize deception in the implementation of the statute.

*Id.* at ¶ 50 (Bradley, J., concurring).

E. Post-*Dowhower* Cases

¶ 40. Since we issued our decision in *Dowhower,* the court of appeals has decided numerous cases involving UIM coverage and reducing clauses. In 2000, the court of appeals decided *Sukala,* 2000 WI App 266, a

case in which plaintiffs challenged the validity of the reducing clauses in two UIM provisions. The court "conclude[d] that under § 632.32(5)(i) and *Dowhower,* UIM reducing clauses like those at issue here can no longer be considered to render coverage illusory." *Id.* at ¶ 15.

¶ 41. The *Sukala* court further stated: "We read the *Dowhower* court's statements to mean either that (1) unambiguous UIM reducing clauses can no longer be considered 'illusory' or (2) asking whether unambiguous UIM reducing clauses are illusory is no longer a valid inquiry." *Id.* at ¶ 19.

■

¶ 42. In essence, we agree with this analysis. But then the court proceeded to an ambiguous and misleading conclusion:

> We conclude that under *Dowhower* and the declared public policy of the legislature in Wis. Stat. § 632.32(5)(i), UIM reducing clauses complying with § 632.32(5)(i) cannot render UIM coverage "illusory." Once we have concluded that the UIM provisions of a policy are unambiguous, as we have here, then our inquiry is at an end.

*Id.* at ¶ 20. In the quoted language, the *Sukala* court shifted terms, moving from the reducing clause to "the UIM provisions of the policy," although the two could easily be read as one and the same. A policy in which all "the UIM provisions" are unambiguous is different from a policy in which only the reducing clause is unambiguous. In any event, the concluding sentence implies that once the reducing clause is found to be unambiguous, the inquiry is at an end. That is incorrect because *Dowhower contemplates consideration of the entire policy.*

¶ 43. In 2001, in *Estate of Dorschner v. State Farm Mutual Automobile Insurance Co.,* the court of appeals reinforced the impact of *Sukala,* stating:

> In that case the court found the reducing clause, which mimicked the language of the authorizing statute, was clearly unambiguous. . . . The court concluded that under *Dowhower* and the declared public policy of the legislature in Wis. Stat. § 632.32(5)(i), reducing clauses that comply with the statute cannot render UIM coverage illusory. "Once we have concluded that the UIM provisions of a policy are unambiguous, as we have here, then our inquiry is at an end."

*Dorschner v. State Farm Mut. Auto. Ins. Co.,* 2001 WI App 117, ¶ 11, 244 Wis. 2d 261, 628 N.W.2d 414 (quoting *Sukala,* 2000 WI App 266, ¶ 20).

¶ 44. However, in *Taylor,* 2001 WI 93, this court again emphasized the *Dowhower* requirement that the policy must be unambiguous in its relevant language for a reducing clause to be valid.

> In *Dowhower,* we held that a reducing clause in an UIM policy is valid so long as 'the policy clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources.' We reached this conclusion after considering the case law regarding UIM coverage in conjunction with the statute that authorizes reducing clauses in UIM policies, Wis. Stat. § 632.32(5)(i)1.

*Id.* at ¶ 24 (citations omitted). In *Taylor,* the court decided that a reducing clause was valid after examining it in the context of the whole policy. *Id.* at ¶¶ 25–26.

¶ 45. In her dissent in *Taylor,* Justice Bradley asserted that UIM coverage, as authorized by Wis. Stat. § 632.32(5)(i), does not meet the expectations of a reasonable insured. *Id.* at ¶ 35 (Bradley, J., dissenting).

She added that, "While I do not question the validity of a statutorily authorized reducing clause, I do question the validity of a *policy* crafted around the reducing clause in such a way as to defeat the reasonable expectations of the insured." *Id.* at ¶ 45 (emphasis added).

¶ 46. Although Justice Bradley's statement was not part of the majority opinion, it reflects the reasoning in *Dowhower* that reducing clauses must be crystal clear in the context of the whole policy. Otherwise, insureds are not likely to understand what they are purchasing.

F. Application of *Dowhower* and Wis. Stat. § 632.32(5)(i)

¶ 47. In this case, the circuit court declared that the reducing clause contained in the policy issued to Schmitz was void and unenforceable. The court relied on *Sweeney*. Judge Bayorgeon wrote that he did not interpret Wis. Stat. § 632.32(5)(i) to be a "blanket endorsement" of reducing clauses. He viewed the reducing clause in the context of the entire policy and determined that the policy failed to clearly set forth that UIM payments would be reduced by sums paid by others, "so that there is no mistake, confusion or illusion with respect to what is being provided for the premium being paid." He concluded that, "The contract is illusory and therefore unenforceable."

¶ 48. The court of appeals reversed, determining that the UIM coverage was not illusory. It reasoned that the "provision is not fairly susceptible to an interpretation that would allow Schmitz to recover the full $250,000 policy limit over and above the $100,000 received from the party responsible for his injuries." *See*

*Schmitz,* unpublished slip op. at ¶ 5. It concluded by quoting *Sukala* to the effect that:

> [U]nder *Dowhower* and the declared public policy of the legislature in Wis. Stat. § 632.32(5)(i), UIM reducing clauses complying with § 632.32(5)(i) cannot render UIM coverage 'illusory.' Once we have concluded that the UIM provisions of a policy are unambiguous, as we have here, then our inquiry is at an end.

*Id.* at ¶ 7.

■

¶ 49. In fact, the teaching of *Dowhower* and *Taylor* is quite the contrary. These cases direct a reviewing court to examine an unambiguous reducing clause in the context of the entire policy to determine whether the coverage provided is understandable and clear. If the coverage provided is misleading and unclear, the policy is ambiguous, or worse, and the clause reducing UIM coverage is not enforceable. *Dowhower,* 2000 WI 73, ¶ 33; *Taylor,* 2001 WI 93, ¶¶ 24, 26. With this principle in mind, we will examine the UIM policy issued by American Merchants to Schmitz.

1. Standard of Review

■

¶ 50. The construction or interpretation of an insurance policy presents a question of law to which we apply de novo review. *Hull v. State Farm Mut. Auto. Ins. Co.,* 222 Wis. 2d 627, 636, 586 N.W.2d 863 (1998); *Gen. Cas. Co. v. Hills,* 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997).

■

¶ 51. We first must determine whether the insurance contract is ambiguous. Words or phrases of an insurance contract are ambiguous if they are suscep-

tible to more than one reasonable construction. *Dowhower,* 2000 WI 73, ¶ 34. Unambiguous language in an insurance contract must not be rewritten by construction. *Smith,* 155 Wis. 2d at 811. However if the policy is ambiguous, we construe such ambiguities against the insurer. *Brunson v. Ward,* 2001 WI 89, ¶ 12, 245 Wis. 2d 163, 629 N.W.2d 140. To construe ambiguous language in an insurance policy, we attempt to determine "what a reasonable person in the position of the insured would have understood the words of the policy to mean." *Taylor,* 2001 WI 93, ¶ 10 (quoting *Dowhower,* 2000 WI 73, ¶ 35). We are conscious that our interpretation of ambiguous language in an insurance policy "should advance the insured's reasonable expectations of coverage." *Id.* (citing *Kremers-Urban Co. v. Am. Employers Ins. Co.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984)).

2. The Policy Language

¶ 52. The "Personal Auto Policy" issued by American Merchants to Schmitz is 29 pages long.[6] The second page is a "Quick Reference Index Sheet" that lists, among other things, the declarations page and Parts A through F of the policy. The "Quick Reference Index Sheet" shows that Uninsured Motorists Coverage is in Part C. Underinsured Motorists Coverage is not mentioned.

---

[6] The policy is presented as Exhibit A in the circuit court record. In Exhibit A, the pages appear in a different order than in Schmitz's appendix. The court understands that the policy is accurately presented in the appendix.

The pages of the policy are not numbered sequentially. We therefore refer to the pages in the order in which they appear.

¶ 53. The third page, the declarations page, lists the type of coverages the policy provides: Liability, Medical Payments, Uninsured Motorists, and Damage To Your Auto. For each of these four coverages, the liability limits, deductible, and cost are included. The third page also includes, under "Additional endorsements and forms made part of this policy," "See Endorsement 3–4044."

¶ 54. The fourth page—"3–4044"—states the policy number and then lists the "Forms on this Policy." Eleven form numbers follow. The last of the 11 form numbers is "PP0428 1295." This form number later appears under the heading "Underinsured Motorists Coverage-Wisconsin."

¶ 55. The fifth page is entitled "Availability Of Underinsured Motorists Coverage—Wisconsin." The text on the page reads in its entirety:

> Wisconsin Insurance Law (Section 632.32) require [sic] we notify you of the availability of underinsured motorists coverage. The law does not require you purchase this coverage; however, the law does require we offer you the opportunity to purchase this coverage. *If you have purchased this coverage, please disregard this notice.*
>
> What is underinsured motorists coverage?
>
> If you are involved in an accident in which the other driver is legally at-fault, the at-fault driver's insurance policy has the obligation to pay for your bodily injury damages and bodily injury damages to passengers in your car. *The at-fault driver may not have enough liability insurance to pay all the bodily injury damages you and your passengers have sustained.* To protect yourself and others in your car, underinsured motorists coverage is available to you. *This coverage will pay the*

*remainder of the bodily injury damages up to the limit of liability you select for underinsured motorists coverage.*

For additional information, or if you desire to purchase this coverage, please contact your sales representative (emphasis added).

¶ 56. The sixth page is the definitions page. It does not define "underinsured motorist" or "reducing clause."

¶ 57. The twenty-third page of the policy is entitled "Split Underinsured Motorists Limits." It states that the policy provides "$250,000 each person," and "$500,000 each accident." Under "Underinsured Motorists Coverage," the schedule states:

The first paragraph of the Limit of Liability provision in the Underinsured Motorists Coverage Endorsement is replaced by the following:

LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, *the limit of liability shown in the Schedule* or in the Declarations for each accident for Underinsured Motorists Coverage *is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident* (emphasis added).

¶ 58. At the top of the twenty-seventh page are the words: "This Endorsement Changes the Policy. Please Read It Carefully." Underneath this advisory are

85

the words "Underinsured Motorists Coverage-Wisconsin." Under "Insuring Agreement," paragraph "C" states in part:

> "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

¶ 59. On the next page, the twenty-eighth page, under "Limit of Liability," paragraph "B" reads:

> The limit of liability shall be reduced by all sums:
>
> 1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and
>
> 2. Paid or payable because of the "bodily injury" under any of the following or similar law:
>
> a. Workers' compensation law: or
>
> b. Disability benefits law.
>
> C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.
>
> D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.
>
> E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
>
> 1. Workers' compensation law: or
>
> 2. Disability benefits law.

The material on the twenty-seventh, twenty-eighth, and twenty-ninth pages of the policy makes up Form "PP 04 28 12 95," which we believe is the same as "PP0428 1295" referred to on the fourth page of the policy.

3. The Ambiguity of the UIM provisions

¶ 60. In interpreting the policy language, we begin with the reducing clause on the twenty-eighth page, which provides that:

> B. The limit of liability shall be reduced by all sums:
>
> > 1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and
> >
> > 2. Paid or payable because of the "bodily injury" under any of the following or similar law:
> >
> > > a. Workers' compensation law; or
> > >
> > > b. Disability benefits law.

¶ 61. There is no dispute that this reducing clause is in conformity with Wis. Stat. § 632.32(5)(i). Thus, the reducing clause itself is not ambiguous or contrary to public policy. *Dowhower,* 2000 WI 73, ¶ 20. If we looked only at the reducing clause and not at the policy as a whole, our inquiry would be at an end. *See Sukala,* 2000 WI App 266, ¶ 20. However, language in an insurance policy may be ambiguous in the context of the entire insurance contract. *See Taylor,* 2001 WI 93, ¶ 26 (citing *Dowhower,* 2000 WI 73, ¶ 35). Here, the policy as a

whole, and the "Availability of Underinsured Motorists Coverage—Wisconsin" form in particular, create ambiguity.

¶ 62. First, we note that the declarations page, which is generally the portion of an insurance policy to which the insured looks first, does not mention UIM coverage at all. It mentions only UM coverage. One consequence is that there is no place on the declarations page to explain that the policy's UIM liability will be reduced by payments from other sources. There is no place to alert the insured that although the insured could receive the full limit of uninsured motorists coverage from the insurer, there is no possibility of receiving the full limit of underinsured motorists coverage from the insurer. The reasonable insured would look to the declarations page for the total premium and the breakdown of the premium by type of coverage. There is no separately-listed cost for underinsured motorist coverage on the declarations page or any other page.

¶ 63. Second, there is no reference to Underinsured Motorists Coverage on the "Quick Reference Index Sheet." If, on a hunch, the insured turned to Part C—"Uninsured Motorists Coverage"—anticipating a discussion of Underinsured Motorists Coverage under the subheading "Other Insurance," the insured would be disappointed.

¶ 64. Third, the twenty-third page contains the "Split Underinsured Motorists Limits," which might be characterized as a declarations page for underinsured motorists liability limits. This page states limits of $250,000 for each person capped by $500,000 for each accident. The schedule reads in relevant part:

The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages . . . .

This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident

¶ 65. The "Schedule" on the twenty-third page fails to inform that these dollar limits represent combined payments from all sources and will never be paid by the insurer because of the policy's reducing clause. Because the "maximum" limits of liability are described as the "most" American Merchants will pay, they imply that these limits are attainable.

¶ 66. Finally, we examine the document entitled "Availability of Underinsured Motorists Coverage—Wisconsin," which is located on the fifth page. The document states that the insurer must notify the insured of the availability of UIM coverage, but that the insured does not have to buy it. It states "If you have purchased this coverage, please disregard this notice." It also explains that "This coverage will pay the remainder of the bodily injury damages up to the limit of liability you select for underinsured motorists coverage." American Merchants asserts that this document is not part of the policy and does not modify the policy as an endorsement would. It also claims that a reasonable insured who had already purchased UIM coverage

89

would do what the document says—"disregard this notice." The court of appeals agreed with this argument, noting that this page was not part of the policy's terms" and "specifically informed policyholders with UIM coverage, such as Schmitz, to disregard the information it provided." *See Schmitz,* unpublished slip op. at ¶ 6.

¶ 67. Schmitz, on the other hand, asserts that a reasonable insured would read the definition of UIM coverage and assume that the policy he or she had purchased utilized the same definition.

¶ 68. We note that the notice of availability document, #511–8822 0996, is specifically listed on the fourth page of the policy, under "Forms on this policy." It is the second listed form. We think that a reasonable insured, reading the fourth page, would expect the notice of availability to be part of the policy.

¶ 69. As to the portion of the notice reading "If you have purchased this coverage, please disregard this notice," we note that pursuant to Wis. Stat. § 632.32(4m)(a)1, the notice must contain "written notice of availability of underinsured motorist coverage, including a brief description of the coverage." We think the words "If you have purchased this coverage, please disregard this notice" clearly means to inform the insured to disregard the notice in terms of the availability of UIM coverage, not the description of the coverage. The availability of coverage is relevant to prospective insureds, but the description of the coverage is relevant to both prospective insureds *and* current insureds.

¶ 70. We believe a reasonable insured, reading the notice, would understand that he or she should disregard the notice if he or she has already purchased UIM coverage. However, the explanation in the notice is the

most readily understandable definition of UIM coverage in the policy. It appears to tell a prospective insured that if he or she purchases UIM coverage, the coverage will pay the *remainder* of the bodily injury damages up to the limit of liability the person selects.

¶ 71. We do not see why an insured would think that the UIM coverage being offered to persons who do not have UIM coverage will be *different* from the UIM coverage the insured has already purchased. Moreover, the definition of UIM coverage in the notice of availability form is likely to be what an average insured understands. *See Taylor,* 2001 WI 93, ¶ 35 (Bradley, J., dissenting) ("reasonable insureds believe they are purchasing coverage for their damages in a set dollar amount above and beyond the liability limits of the at-fault driver").

¶ 72. To sum up, the American Merchants policy is a maze that is organizationally complex and plainly contradictory. It sends several false signals to the insured. It is not user-friendly. The notice of availability of UIM coverage, together with the "maximum of liability" listed on the declarations page and on the split UIM limits page, combine to create confusion, ambiguity, and illusory coverage in the context of the entire policy. This renders an otherwise unambiguous, although poorly labeled, reducing clause unenforceable. Under the circumstances, the circuit court performed the correct analysis and properly granted Schmitz summary judgment in his case against American Merchants. This determination was necessary to advance the insured's reasonable expectation of coverage.

91

## III. SUMMATION

¶ 73. The *Dowhower* decision recognizes the validity of the second theory of underinsured motorists coverage and assumes that it will be written into most Wisconsin automobile insurance policies. It upholds a reducing clause that conforms to Wis. Stat. § 632.32(5)(i), "provided that the policy [in which the reducing clause appears] clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." *Dowhower*, 2000 WI 73, ¶ 33. This formulation opens the entire policy to examination. When the policy as a whole fails to set forth a clear, understandable description of the underinsured motorists coverage being purchased, "a reducing clause may be ambiguous within the context of the insurance contract." *Id.* at ¶ 35.

¶ 74. The *Dowhower* decision creates a quandary for the judiciary because it does not provide a bright line rule for courts to apply. As a practical matter, every automobile insurance policy with an underinsured motorists reducing clause becomes a potential battleground over contextual ambiguity. This prospect is disheartening. The public interest will not be served by interminable litigation—at great cost—over issues that could be resolved easily by conspicuous forthright explanations from insurers. The public interest will be served when insurance buyers are given materials to make informed choices about the desired limit of their underinsured motorists coverage. The burden should be on insurers to show that insureds have been put in a position to make informed choices. Wisconsin courts should not be expected to become parties to consumer

deception by enforcing reducing clauses that have not been fully and fairly explained.

## IV. CONCLUSION

¶ 75. We conclude that although the reducing clause in the UIM provisions of the insurance policy issued by American Merchants to Dennis Schmitz comports with the requirements of Wis. Stat. § 632.32(5)(i), it does not, when viewed in the context of the entire policy, clearly set forth that the insured is purchasing a fixed level of UIM recovery arrived at by combining payments from all sources. The reducing clause is therefore ambiguous and unenforceable, and renders the UIM coverage illusory. Accordingly, we reverse the decision of the court of appeals and reinstate the judgment of the circuit court granting Schmitz's motion for summary declaratory judgment.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 76. N. PATRICK CROOKS, J. *(dissenting).* I cannot join the majority's opinion because in examining the insurance contract as a whole, the majority completely ignores the unambiguous UIM reducing clause. I would affirm the court of appeals' decision because when the unambiguous UIM reducing clause is read *together* with the rest of the policy, I conclude that the reducing clause is not susceptible to more than one interpretation. Accordingly, I respectfully dissent.[1]

---

[1] The majority apparently, but not explicitly, overrules the holding in *Sukala v. Heritage Mutual Insurance Co.,* 2000 WI App 266, ¶ 20, 240 Wis. 2d 65, 622 N.W.2d 457, that "[o]nce we have concluded that the UIM provisions of a policy are unambiguous . . . then our inquiry is at an end." *See also Estate of*

¶ 77. In one breath the majority concludes that the UIM reducing clause here is unambiguous and not contrary to public policy since it complies with Wis. Stat. § 632.32(5)(i). Majority op. at ¶ 61. In the next breath, however, the majority concludes that, although unambiguous, the reducing clause is unenforceable because it creates illusory coverage in the context of the entire policy. *Id.* at ¶ 72. I cannot join the majority's analysis because when examining the policy as a whole, it completely ignores the unambiguous UIM reducing clause. The majority draws its conclusion based on several other portions of the policy, interpreted separately and independently from the unambiguous UIM reducing clause at issue. To me, the majority's approach is contrary to *Dowhower v. West Bend Mutual Ins. Co.,* 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557, and *Taylor v. Greatway Ins. Co.,* 2001 WI 93, 245 Wis. 2d 134, 628 N.W.2d 916, and violates our rules of contract, including insurance contract, interpretation.

¶ 78. Beginning at paragraph 62, the majority opinion goes to great length to discuss various pages of the policy as either not referencing UIM coverage, *see* majority op. at ¶¶ 62–63, or characterizing UIM coverage in a manner that the majority finds "organizationally complex," "plainly contradictory" and "not user-friendly." *Id.* at ¶¶ 64–65, 72. The majority, however, never analyzes those sections together with, or in relationship to, the unambiguous UIM reducing clause. Furthermore, the majority simply concludes that the discussed provisions render an otherwise unambiguous

---

*Dorschner v. State Farm Mut. Auto. Ins. Co.,* 2001 WI App 117, ¶ 12, 244 Wis. 2d 261, 628 N.W.2d 414. If the majority intends to overrule or withdraw language from *Sukala,* it should do so explicitly, or appropriately distinguish *Sukala* so as not to create confusion.

reducing clause unenforceable, *see id.* at ¶ 72, but fails to explain *how* the whole contract is ambiguous or susceptible to more than one construction.

¶ 79. I agree with the majority that *Dowhower* and *Taylor* recognized that language in an insurance policy can be ambiguous within the context of the whole policy. Those cases do not, however, hold—or even suggest—that when examining the insurance policy as a whole, the unambiguous UIM reducing clause should be completely ignored. To the contrary, in *Taylor,* we examined the policy as a whole in relation to the definition of underinsured vehicle. *See* 2001 WI 93, ¶ 27 (comparing the definition to other policy provisions and concluding that "nothing in the rest of [the] policy [ ] obscures the unambiguous definition of underinsured vehicle").

¶ 80. Moreover, focusing on the unambiguous UIM reducing clause when examining the context of the insurance policy is consistent with our rules of contract interpretation. The unambiguous UIM reducing clause should be read *together* with the rest of the policy, to determine if the reducing clause is susceptible of more than one construction. *See Estate of Dorschner v. State Farm Mut. Auto. Ins. Co.,* 2001 WI App 117, ¶ 12, 244 Wis. 2d 261, 628 N.W.2d 414 ("Nor do we find that the antistacking clause, when read together with the rest of the policy, is susceptible to more than one construction."). In addition, "[W]hen the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction." *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990).

¶ 81. Applying the above analysis here, I conclude that the unambiguous reducing clause remains unambiguous, or as the majority requires "understandable and clear." *See* majority op. at ¶ 49. Granted, like many

95

insurance contracts, the American Merchants policy issued to Schmitz is long and complex with many clauses and endorsements. Contrary to the majority's conclusion, however, complexity alone does not render the policy ambiguous. *See Heater v. Fireman's Fund Ins. Co.,* 30 Wis. 2d 561, 565, 141 N.W.2d 178 (1966); *Hause v. Bresina,* 2002 WI App 188, 256 Wis.2d 664, 649 N.W.2d 736; *Hinrichs v. American Family Mut. Ins. Co.,* 2001 WI App 114, ¶ 15, 244 Wis. 2d 191, 629 N.W.2d 44.

¶ 82. In concluding that the UIM reducing clause is unenforceable, the majority finds five areas of the policy where the explanation of UIM coverage could be clearer, *see* majority op. at ¶¶ 62–70, but seems to base its conclusion largely on the document entitled "Availability of Underinsured Motorists Coverage—Wisconsin." *Id.* at ¶ 61. The majority concludes that the definition of UIM coverage in this notice is the "most readily understandable definition of UIM coverage in the policy," and that this definition apparently creates confusion for a reasonable insured because it differs from the actual UIM coverage in the policy. *Id.* at ¶ 70. The majority seems to hold that by stating in the notice that "[UIM] coverage will pay the remainder of the bodily injury damages up to the limit of liability the person selects," the UIM reducing clause is rendered ambiguous.

¶ 83. I disagree. When the availability of UIM coverage notice is read *together* with the unambiguous UIM reducing clause, it is clear that UIM coverage is reduced by all sums paid by or on behalf of persons or organizations legally responsible. The policy unambiguously states that UIM coverage is only coverage up to the limit of liability the person selects. When examined together, therefore, the unambiguous UIM reducing

96

clause remains unambiguous, nor does the notice provision render the UIM coverage illusory. The American Merchants policy follows the statutory language in Wis. Stat. § 632.32(5)(i), and comports with *Dowhower* because it "clearly sets forth that the insured is purchasing a fixed level of UIM recovery that will be arrived at by combining payments made from all sources." 2000 WI 73, ¶ 33. I conclude that the UIM reducing clause is unambiguous on its face, as well as in the context of the entire policy. The majority errs by rewriting the policy through judicial construction.

¶ 84. Finally, I find it necessary to comment on the majority's summation that "*Dowhower* [ ] creates a quandary for the judiciary because it does not provide a bright line rule for courts to apply." Majority op. at ¶ 74. The majority further writes, "As a practical matter, every automobile insurance policy with an underinsured motorists reducing clause becomes a potential battleground over contextual ambiguity." *Id.* Rather, I believe the majority opinion has created exactly what it has criticized here—a quandary. The majority has searched for, and subsequently has created, ambiguity in a policy where it otherwise did not exist. It has done so by ignoring the unambiguous UIM reducing clause at issue. As a practical matter, the majority has created confusion for insurers, consumers, and the courts of this state, because now a clear and unambiguous UIM reducing clause has been wholly ignored in order to conclude that such clause is ambiguous in the context of the policy as a whole. I cannot join in this analysis; therefore, I respectfully dissent.

¶ 85. I am authorized to state that Justices JON P. WILCOX and DIANE S. SYKES join this dissent.